09-799-3969

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

ED FIALA, individually, and on behalf of other
similarly situated persons who reside within the
Wasco Sanitary District and TIM KOBLER
CUSTOM HOMES, INC.,

       Plaintiffs,

  v.

WASCO SANITARY DISTRICT, ROBERT
SKIDMORE, RAUL BRIZUELA, GARY
SINDELAR, CHARLES V. MUSCARELLO,
PATRICK GRIFFIN, JERRY BOOZE,
KENNETH BLOOD, FOX MILL LIMITED
PARTNERSHIP, B&B ENTERPRISES and
HUDSON HARRISON,

       Defendants.

No.  10 –CV-2895

Judge: Hon. Ruben Castillo
Room: 2141

### PLAINTIFFS' FIRST AMENDED COMPLAINT AT LAW[1]

NOW COMES the Plaintiffs, ED FIALA, Individually, and on behalf of other similarly
situated persons who reside within the Wasco Sanitary District and TIM KOBLER CUSTOM
HOMES, INC., by and through their attorneys, NEWMAN RAIZ, L.L.C., and complaining
against the Defendants WASCO SANITARY DISTRICT, ROBERT SKIDMORE, RAUL
BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN,
JERRY BOOSE, KENNETH BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B
ENTERPRISES and HUDSON HARRISON as follows:

### DEMAND FOR JURY TRIAL

The Plaintiffs demand trial by jury.

## I.  PARTIES

---

[1] This amended complaint is filed pursuant to this Court's order of August 17, 2010 permitting the newly obtained
documents attached to Plaintiff's Motion to Supplement to be attached and referenced to this amended complaint..

1. That Plaintiff ED FIALA was and is, at all relevant times herein, a resident of the Village of Campton Hills, Kane County, in the State of Illinois, and at all times herein was provided water & sanitary sewer services from the Defendant, WASCO SANITARY DISTRICT (hereinafter referred to as "WSD"). Ed FIALA is also a homeowner within the WSD and within the Fox Mill subdivision and owns 3.5 P.Es which he purchased with his home. ED FIALA has been injured as a result of the wrongful conduct of the Defendants herein including but not limited to (1) the misappropriation of public funds by the WSD and its trustees; and (2) the unlawful taking of property by the WSD and its trustees from ED FIALA without just compensation; and (3) ED FIALA has had to pay additional taxes and assessments for his water and sewer services, and will in the future be forced to pay higher taxes and assessments. FIALA brings this suit in his individual capacity as a homeowner and as a taxpayer for the misappropriation of general public funds for which the municipality (WSD) has a right to collect, pursuant to <u>Golden v. City of Flora</u> 408 Ill. 129, 130, 96 N.E.2d 506, 508 (Ill.1951). Because the WSD is controlled by the Defendants, any attempt to have the WSD file this suit would be futile.

2. That Plaintiff TIM KOBLER CUSTOM HOMES, INC. (Hereinafter "KOBLER") is an Illinois corporation doing business in Kane County, Illinois and at all relevant times herein was a custom home builder who built approximately 50 homes in the Fox Mill subdivision, *infra*.

3. That at all relevant times herein, the WSD was a government entity established pursuant to the Sanitary District Act of 1936 (70 ILCS 2805/1) providing water & sanitary sewer services to the plaintiff and other residents within Kane County, Illinois, including the Fox Mill subdivision, for a fee. No money is being sought from the WSD in this action,

2

but instead they are named herein as an interested party with the right to notice that this action may adjudicate their rights to certain property.

4. That at all relevant times herein B&B Enterprises (hereinafter "B&B") was an Illinois corporation doing business in Kane County, Illinois.

5. That at all relevant times herein Fox Mill Limited Partnership (hereinafter "FMLP") was an Illinois Limited Partnership doing business in Kane County, Illinois.

6. That at all relevant times RAUL BRIZUELA (hereinafter "BRIZUELA") was elected as a trustee of the WSD in November 1998, served as the WSD President, and was a resident of the Village of Campton Hills, Kane County, Illinois.

7. That at all relevant times ROBERT SKIDMORE (hereinafter "SKIDMORE") was elected as a trustee of the WSD in December 2006, served as the WSD Vice President, and was a resident of the Village of Campton Hills, Kane County, Illinois.

8. That at all relevant times GARY SINDELAR (hereinafter "SINDELAR") was elected as a trustee of the WSD in December 2006 and was a resident of the Village of Campton Hills, Kane County, Illinois.

9. That at all relevant times CHARLES V. MUSCARELLO (hereinafter "MUSCARELLO") has served as legal counsel to the WSD and has directly negotiated fees from the unnamed third party contractors for the sale of Population Equivalent[2] (hereinafter "P.E.") by FOX MILL LIMITED PARTNERSHIP (hereinafter "FMLP") and B&B with the consent and assistance of the WSD and its trustees.

10. That at all relevant times PATRICK GRIFFIN (hereinafter "GRIFFIN") was Vice President of B&B and also served as the Attorney for Defendant HUDSON HARRISON for HARRISON'S successful attempt to annex his property in the WSD and has directly

---

[2] "Population Equivalent" means an average waste loading equivalent to that produced by one person which is defined as 100 gallons per day and is a term used to evaluate the impact of industrial or other waste on a treatment works or stream. One population equivalent is 100 gallons of sewage per day, containing 0.17 pounds of BOD and 0.20 pounds of suspended solids.

negotiated fees from the unnamed third party contractors for the sale of P.E. by FMLP and B&B with the consent and assistance of the WSD and its trustees and attorney MUSCARRELO.

11. That at all relevant times, JERRY BOOSE (hereinafter "BOOSE"), was an officer of B&B and FMLP and has directly negotiated fees from the unnamed third party contractors for the sale of P.E. by FMLP and B&B with the consent and assistance of the WSD and its trustees and attorney MUSCARELLO.

12. That at all relevant times, KENNETH BLOOD (hereinafter "BLOOD"), was an officer of B&B and FMLP and has directly negotiated fees from the unnamed third party contractors for the sale of P.E. by FMLP and B&B with the consent and assistance of the WSD and its trustees and attorney MUSCARELLO.

13. That at all relevant times herein, HUDSON HARRISON (hereinafter "HARRISON") was an owner of certain real property located in Kane County, Illinois.

14. At all times BRIZUELA, SKIDMORE and SINDELAR acted in both their individual capacity for personal gain of themselves and family members, and as duly authorized elected officials of a local government entity in Kane County, Illinois.

## II.    SUBJECT MATTER AND PERSONAL JURISDICTION

15. Count I of this Complaint is brought pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §1961 *et. seq*. This Court has concurrent jurisdiction over this Federal claim. Tafflin v. Levitt, 493 U. S. 455 (1990). The remaining counts are State law claims under Illinois Law.

## III.    VENUE

4

16. Venue is proper in the Circuit Court of Kane County as each Defendant either resides in Kane County or conducts business in Kane County. In addition, the majority of events complained of in this complaint occurred in Kane County.

## IV.    LIST OF EXHIBITS[3]

17. The following documents are attached hereto as exhibits in support of this complaint:

Exhibit

   a)   Fox Mill annexation agreement into the WSD;

   b)   Assorted Illinois EPA violation notices directed to the WSD;

   c)   Norton Farms annexation agreement into the WSD;

   d)   September 7, 2005 letter from Hudson Harrison to the WSD;

   e)   July 16, 2009 report from the Illinois Environmental Protection Agency;

   f)   1994 WSD annual financial report;

   g)   Statement of economic interests filed by Raul BRIZUELA with the Kane County Clerk on May 1, 2009;

   h)   Statement of economic interests filed by Robert Skidmore with the Kane County Clerk on March 31, 2009;

   i)   Statement of economic interests filed by Gary Sindelar with the Kane County Clerk on May 1, 2009;

   j)   E-mail exchanges between WSD trustee BRIZUELA, MUSCARELLO and GRIFFIN discussing the fraudulent transfer of P.E. from B&B to HARRISON (3.5 P.E.s per home required under Illinois Law but B&B demanded that HARRISON return 1 P.E. per home after approval so they could be resold by B&B yet again);

---

[3] The plaintiff incorporates the previously filed exhibits A-hh by reference to this amended complaint. Additional exhibits are attached hereto.

k)  Record of Transfer of property from FMLP to BRIZUELA;

l)  Record of Transfer of an exclusive easement from FMLP to BRIZUELA;

m)  Property Tax Bill for Plaintiff Ed Fiala;

n)  Wasco Sanitary District Residential Connection Permit Application;

o)  RHA&A Process for Fox Mill Connection Permits prepared for the WSD;

p)  Copy of canceled check to FMLP for connection fee of $2,900.00;

q)  April 29, 2008 WSD evaluation prepared by Baxter & Woodman;

r)  May, 2007 Bergland Field Irrigation Site and Wastewater Treatment System Evaluation prepared for WSD;

s)  Copy of civil complaint filed by B&B and FMLP in the Circuit Court of Kane County, 01 LM K 1728;

t)  Copy of civil complaint filed by B&B and FMLP in the Circuit Court of Kane County, 94 L KA 0362;

u)  November 18, 2005 letter from Denker & Muscarello;

v)  Prairie Street Assumed name certificate;

w)  Group exhibit with sample of assorted letter from B&B demanding payment from Builders for the right to use public utility;

x)  2008 Skidmore Statement of Economic Interests filed with County Clerk;

y)  2006 Sindelar Statement of Economic Interests filed with County Clerk;

z)  2007 Sindelar Statement of Economic Interests filed with County Clerk;

aa) 2008 Sindelar Statement of Economic Interests filed with County Clerk;

bb) November 1, 1996 WSD minutes of meeting;

cc) June 6, 2003 memo from engineer RHA&A;

dd) August 1, 2003 letter from Boose;

ee) August 13, 2003 memo from R. Anderson;

ff) April 24, 1998 opinion letter from Muscarello regarding ownership of capacity;

gg) Harrison IEPA permit;

hh) March 23, 2010 I.E.P.A. complaint filed against WSD. (Kane County 10 CH 1287)

ii) June 8, 2004 "Construction and Reimbursement Agreement" by and between Wasco Sanitary District and Fox Mill Limited Partnership. [4]

## V.  FACTS COMMON TO ALL COUNTS

18. This matter involves a scheme to (a) defraud several million dollars from Plaintiff KOBLER and other consumers who have in the past, present and future paid money (hereinafter collectively referred to as "connection fees") directly and indirectly to B&B and FMLP for the "right" to connect their new developments, homes and other construction projects to the WSD; (b) to defraud the tax payer residents of the WSD, such as Plaintiff FIALA, from these connection fees which are supposed to be used to pay for additional infrastructure, lower costs and fund reserves, but instead are paid directly to B&B and FMLP in violation of Illinois Law, forcing the costs to be passed onto the plaintiff and other members of the WSD by way of higher fees and assessments; (c) to take property under color of state authority which is/was owned by Defendant FIALA and other residents of the WSD without notice or just compensation; (d) to secure, sell and purchase stolen property; (e) use interstate mail and electronic mail over the World Wide Web to further and facilitate Defendants' fraud and wrongful conduct; and (f) conspire to commit fraudulent and illegal acts for monetary gain in furtherance of (a) and (d) above.  All of the acts of the Defendants set forth and alleged herein were done

---

[4] The agreement was drafted by Defendant Muscarello and signed by Defendants Blood and Boose on behalf of Defendant Fox Mill Limited Partnership, and notarized by Defendant Griffin.

knowingly, intentional and with willful and wanton disregard to the rights of the Plaintiffs and others within the WSD.

19. The Participants in the scheme alleged fall into 2 categories:

### Category 1 - The B&B Family
### (private corporations and individuals)

a) BLOOD is an officer, owner and one of the founders of "B&B" and upon information and belief is one of the "B's" in the company name along with BOOSE (the other "B").

b) BOOSE is an officer, owner and one of the founders of "B&B" and upon information and belief is one of the "B's" in the company name along with BLOOD (the other "B").

c) BLOOD and BOOSE are the bosses of the B&B family. Upon information and belief both BLOOD and BOOSE have financial interests and/or ownership interests in B&B, FMLP and Prairie Lakes Investment, Inc., all of which have worked in concert with each other to commit the wrongful acts set forth herein.

d) B&B was and/or is a developer for the Fox Mill subdivision, Prairie Lakes subdivision and the Fox Creek subdivision, all of which were located in Kane County, Illinois.

e) FMLP was also one of the developers for the Fox Mill subdivision.

f) Some or all of the partners in FMLP are officers and directors of B&B, including but not limited to BLOOD and BOOSE. At all relevant times herein B&B and FMLP shared the same address, phone numbers, employees and equipment. Upon information and belief B&B and FMLP have commingled activities and funds. B&B purports to be the successor to FMLP, assuming all of its assets and liabilities. (Exhibit c). B&B and FMLP are corporate alter egos.

8

g) HARRISON is an owner of the property referred to herein as Norton Farms.

h) At all relevant times herein SKIDMORE has been married to Kim Skidmore. Kim Skidmore has been an employee of B&B while ROBERT SKIDMORE served on WSD from 1998 to the present. Upon information and belief Kim Skidmore is also the niece of Ken Blood.

i) At all relevant times herein BRIZUELA has been married to Caroline Brizuela. Caroline Brizuela is the daughter of KEN BLOOD. Upon information and belief, Caroline Brizuela is a partner and/or owns an interest in Prairie Lakes Investment Group, Inc. Caroline BRIZUELA, through ownership and partnership in various other corporations and partnerships, is partner with and/or conducts business with Patrick Griffin, Charles Muscarello, Gary Sindelar and various organizations affiliated with B&B. (See exhibit V)

j) At all relevant times herein SINDELAR has been an employee of B&B. Gary Sindelar, through ownership and partnership in various other corporations and partnerships, is partner with and/or conducts business with Patrick Griffin, Charles Muscarello, Caroline BRIZUELA and various organizations affiliated with B&B. (See exhibit V)

k) At all relevant times herein, GRIFFIN has been a licensed attorney in the State of Illinois. At all relevant times herein, GRIFFIN has been an officer in the B&B Corporation (Vice President). GRIFFIN is married to Sarah Griffin. Sarah Griffin is the daughter of BLOOD. GRIFFIN has provided legal services for B&B, FMLP and HARRISON. In addition, upon information and belief GRIFFIN owns an interest in Prairie Lakes Investment Group, Inc. GRIFFIN has served as counselor to the B&B family. Patrick Griffin, through ownership and partnership

in various other corporations and partnerships, is partner with and/or conducts business with Caroline Brizuela, Charles Muscarello, Gary Sindelar and various organizations affiliated with B&B. (See exhibit V)

l) Hereinafter, BLOOD, BOOSE, BRIZUELA, SKIDMORE, SINDELAR, GRIFFIN, B&B and FMLP are collectively referred to the "B&B Family."

### Category II- The Wasco Sanitary District
### (Trustees and attorney)

m) The WSD is a branch of local government responsible for providing water and sewer services to the members of its District. The WSD is comprised of the elected trustees (BRIZUELA, SKIDMORE, and SINDELAR). The WSD charges users such as the Plaintiff for water and sewer services through monthly billing for use. In addition, the WSD charges homeowners for capital improvements through property taxes. (exhibit m). These capital improvements include infrastructure which should be paid for with the funds which have been diverted from the WSD to the B&B Family and other defendants for the sale of the P.E.s and connection fees.

n) BRIZUELA, SKIDMORE, SINDELAR are elected trustees of the WSD (hereinafter collectively referred to as WSD TRUSTEES). As set forth above, BRIZUELA and SKIDMORE have blood ties with the B&B family, while SINDELAR is a direct B&B employee.

o) BRIZUELA failed to disclose his wife's interests and relationship with B&B and Prairie Lakes Investment Group, Inc. in the Statement of Economic Interests he filed with the Kane County Clerk on May 1, 2009, despite the requirement under Illinois law to do so. (See exhibit G).

10

p) SKIDMORE failed to disclose his wife's interests and employment with B&B in the Statement of Economic Interests he filed with the Kane County Clerk, despite the requirement under Illinois law to do so. (See exhibit H and X).

q) SINDELAR failed to disclose his interests and employment with B&B in the Statement of Economic Interests he filed with the Kane County Clerk, despite the requirement under Illinois law to do so. (See exhibits I, N and Y-AA).

r) MUSCARELLO is an attorney and is an independent contractor who has provided legal services for the WSD. MUSCARELLO, through ownership and partnership in various other corporations and partnerships, is partner with and/or conducts business with Caroline Brizuela, Patrick Griffin, Gary Sindelar and various organizations affiliated with B&B. (See exhibit V)

s) MUSCARELLO is not and has never been a member of the board of trustees of the WSD, a WSD official or a WSD employee.

t) Due to B&B's family and employment relationship with all three WSD trustees, B&B, FMLP, GRIFFIN, BLOOD and BOOSE exercised considerable, if not total, control over the actions of the WSD.

### The "Deals"

20. On or about April of 1994 the WSD entered into an annexation agreement with FMLP and other owners of real property. (Hereinafter referred to as the "Fox Mill annexation agreement") (See Exhibit A).

21. The Fox Mill annexation agreement required FMLP to "pay all reasonable fees, costs and expenses required to accomplish such annexation..." (Exhibit A, page 4)

22. Pursuant to exhibit A, the WSD was to construct a wastewater treatment facility(ies) at FMLP's and other owners' expense. (Exhibit A, page 9)

11

23. Pursuant to exhibit A, the WSD was to construct a water facility (ies) at FMLP's and other owners' expense. (Exhibit A, page 25)

24. In 1994 the WSD retained Guse-Erickson Company to construct the wastewater treatment facility and the water facility at a cost of $1,248,000 (See exhibit F, pps 10-11)

25. From 1994 to the present the WSD has directly or indirectly (allowing FMLP and/or B&B to collect fees (connection fees) from WSD existing and prospective customers) "reimbursed" FMLP and B&B to allegedly pay for the wastewater treatment facility(ies) and/or water facility(ies) built, in part, by Guse-Erickson Company and identified above. (See exhibits N-P)

26. From on or about 1994 through the present, FMLP and/or B&B has continuously collected several million dollars under the guise of "reimbursement", in part by selling the P.E. of the WSD with the participation and assistance of the WSD. The WSD has no records[5] to adequately ascertain how much money B&B has collected from third parties (allegedly under the guise of "reimbursement") as the payments made by the third parties are made directly to B&B in violation of Illinois law.

27. At all relevant times, the WSD, B&B and FMLP knew[6] that neither B&B nor FMLP had any right of reimbursement or ownership interests of P.E.s which was derived from the 1994 annexation agreement (Exhibit A). See exhibit ii attached hereto which provides:

> "WHEREAS, at the time of the execution of the Annexation Agreement, the Sanitary District Act of 1936 (hereinafter "Sanitary District Act") (70 ILCS 2805/1 *et seq.*) ***did not provide for the reimbursement*** to an entity who dedicated improvement to facilities to the District; (Emphasis added)

---

[5] The Plaintiff has sought such records through FOIA and the WSD has failed to produce any such records.
[6] See footnote 4.

28. That the reimbursement agreements referenced in the 1994 Annexation agreement and relied upon by the Defendants for the wrongful conduct alleged herein (See exhibits O and P attached to the 1994 annexation agreement) were never signed or executed by any of the parties to the agreement. In other words, there are no valid, enforceable reimbursement agreements between WSD and B&B/FMLP. (See also exhibit ii)

29. That starting on or about September 7, 2005, HARRISON requested annexation into the WSD in order to develop certain real property owned by him and referred to herein as Norton Farms. (See attached exhibit D)

30. That the WSD refused to allow NORTON FARMS to annex into the district, due in large part to the expense involved and the lack of capacity. (See exhibit U)

31. On or around June 2008, nearly 3 years after his initial requests to the WSD were denied, HARRISON hired attorney GRIFFIN (Vice President of B&B and son in law to B&B owner, BLOOD) to represent him in his quest to annex into the district.

32. Approximately 5 months later, with the assistance of GRIFFIN, on or about December, 2008 the WSD entered into an annexation agreement with HARRISON as the owner of the Norton Farms property (Hereinafter referred to as the "Norton Farm annexation agreement"). (See exhibit C).

33. As part of the Norton Farm annexation agreement, HARRISON agreed to pay B&B $2,650,000.00 directly for "excess capacity" P.E.s which B&B claimed to own under the 1994 Fox Mill Annexation agreement. (See exhibit C, page 38—which is exhibit "c" to the Norton Lakes annexation agreement), even though the Defendants knew that the 1994 annexation agreement did not permit reimbursement. (See exhibit ii)

34. Upon information and belief, HARRISON has already paid B&B $1,325,000.00 as part of the aforesaid agreement. (*Id.* at p. 39)

35. HARRISON is required to pay B&B the balance of $1,325,000.00 upon the approval of the project by the Village of Campton Hills. Upon information and belief the approval from the Village of Campton Hills is in its final stage and is imminent.

### The Illinois Environmental Protection Agency (IEPA) and other violations affecting public health and welfare

36. The WSD has received numerous violation notices from the Illinois Environmental Protection Agency. ("IEPA") (See exhibits B and E).

37. On July 16, 2009 the IEPA issued a report which indicated, amongst other violations, that the WSD was "irrigating in manner that surface discharges are have occurred to Waters of the State without an NPDES Permit findings" (See exhibits B and E). On March 27, 2010 the IEPA filed suit in the Circuit Court of Kane County, 10 CH 1287 against the WSD for numerous violations. (See exhibit HH)

38. The WSD, at the direction of B&B, FMLP, SKIDMORE, BRIZUELA, SINDELAR BOOSE, BLOOD, GRIFFIN and MUSCARELLO has in the past, and continues to spray excess effluent[7] in violation of Illinois law and EPA regulations for the purpose of falsifying the capacity of the WSD system in order to sell additional P.E. for the profit of B&B and FMLP. Specifically, the WSD has in the past and continues to spray effluent when the ground is over saturated in violation of IEPA regulations and discharge effluent directly into Mill Creek in violation of both State and Federal EPA regulations. (See exhibits B and E). Two separate, independent engineering reports have identified the over capacity of the WSD and other problems associated with the district (exhibits q and r). The WSD trustees have ignored these reports for the sole purpose of increasing the profits to their family members within the B&B family.

---

[7] Effluent is the discharge of liquid waste from a sewer system.

39. The above actions of the Defendants endanger the health and welfare of the Plaintiffs and the citizens within the WSD and Illinois.

## VI.   GENERAL RICO AVERMENTS

### A. THE ENTERPRISE (Wasco Sanitary District)

40. The legitimate purpose of the WSD was and is to provide water and sewer services for the members of the WSD district.

41. At all times material to this complaint, including from at least 1996 to the present, the B&B Family, together with its employees and attorneys, collectively, have infiltrated the WSD, causing the WSD to engage in unlawful activities.

42. The WSD is an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce. The enterprise has been, and continues to be, a captive sanitary district (WSD) which has been continuously and systematically controlled, exploited, and dominated in the conduct of its affairs by the B&B family and its members and associates in the manner and means which are described herein.

43. An enterprise exists such that the Defendants B&B and FMLP, along with Defendants SKIDMORE, BRIZUELA, SINDELAR, MUSCARELLO, GRIFFIN, BOOSE, and BLOOD, associated together for the common purpose of defrauding (a) each and every builder of Fox Mill, including Plaintiff KOBLER, as well as dozens of other builders who have been forced to wrongfully pay B&B at the direction of the enterprise; (b) members of the WSD, including but not limited to the Plaintiff Tax Payers and homeowners such as FIALA; (c) governmental bodies including but not limited to the IEPA and the Village of Campton Hills; and (d) other developers and builders, including HARRISON by working in concert to obtain control over funds which should have gone to the WSD to

15

pay for the costs associated with running and improving services provided by the WSD and by falsifying reports, form and disclosures which have been filed with other governmental bodies.

44. In addition, the enterprise, under the guise of State authority, wrongfully took the property of FIALA and the other 650+ home owners of the Fox Mill subdivision without notice or just compensation, and allowed B&B and/or FMLP to sell the property for profit. Specifically, each homeowner in Fox Mill owns 3.5 P.E. which was purchased and transferred to the Fox Mill homeowner at the time of construction. The WSD, at the direction of B&B and FMLP, wrongfully took P.E.s from the homeowners of Fox Mill so B&B and FMLP could re-sell them to others for profit.

45. The enterprise involved:

 (a) From about 1994, and continuing throughout such time to the present, WSD directed prospective developers and builders to B&B, FMLP, GRIFFIN, BLOOD and BOOSE to pay for the right to be annexed into the WSD (See exhibits N-P);

 (b) the WSD would only approve the annexation requests of those developers who first paid B&B and/or FMLP and/or hired B&B's vice President (GRIFFIN) as counsel;

 (c) the WSD wrongfully recalculated the available P.E. in the District at the direction of B&B and/or FMLP in order to provide higher profit (more available P.E. to sell) to B&B and/or FMLP resulting in the WSD on paper showing under-capacity, resulting in the costs of additional infrastructure to be born by Plaintiff and other residents serviced by the WSD (see exhibits q and r);

(d) On or about April 22, 2008 all defendants in concert submitted fraudulent and false applications to the IEPA. (See group exhibit J, exhibit GG) The application was false and fraudulent because:

    a. it misrepresented the actual P.E.s transferred to HARRISON in order for HARRISON to gain approval for his Norton Farms Development; and

    b. Represented that the WSD had adequate capacity when in fact the WSD did not have adequate capacity; and

    c. Misrepresented that the Harrison Project did not deviate from design criteria, when in fact the Harrison Project did deviate from design criteria of the "Illinois Recommended Standards for Sewage Works"

    d. Misrepresented the current flows to make it appear the WSD had more capacity available than there really was. The WSD used low flow numbers, rather than average flow numbers.

(e) SKIDMORE, BRIZUELA, SINDELAR at the request of and with the assistance of MUSCARELLO, GRIFFIN, BOOSE, and BLOOD submitted false financial disclosures with Kane County (See exhibits G- I, X-AA);

(f) The enterprise described herein (WSD) was controlled by BLOOD and BOOSE, who directed their defendant employees, family members and attorneys to commit the wrongful acts described herein.

(g) As a result of said Enterprise the Plaintiffs KOBLER, FIALA and other residents within the WSD have suffered millions of dollars of actual damages due to the misappropriation of funds, will suffer additional financial losses as result of the continued wrongful conduct and have and will suffer irreparable

physical harm to their persons and health due to the Defendants wrongful discharge of toxic effluent, in violation of State and Federal Law, into the public grounds and state and federal waterways.

## B. PREDICATE ACTS

46. The Defendants B&B and FMLP, along with Defendants SKIDMORE, BRIZUELA, SINDELAR, MUSCARELLO, GRIFFIN, BOOSE, BLOOD and HARRISON, engaged in a pattern of racketeering activity from at least 1994 through the present by:

### B&B and FMLP

(a) From about 1994, and continuing throughout such time to the present, the Defendants B&B and FMLP fraudulently directed, with the assistance of the captive and controlled WSD (by phone, email and U.S. postal mail) KOBLER (and more than 20 other prospective developers and builders[8] who wished to connect to the WSD services), to pay B&B and FMLP for the right to be annexed into the WSD. (See examples exhibits N-P and group exhibit W). There are well over 100 separate demands sent by U.S. mail and wire from B&B and FMLP for such payments. Each and every fraudulent demand is a separate predicate act of mail and/or wire fraud.

(b) On or about April 25, 2008 B&B and FMLP, in violation of 720 ILCS 5/33-1, B&B engaged in bribery of WSD official when it gave Defendant BRIZUELA an interest in real property (exhibits k) in an attempt to influence the performance of Mr. BRIZUELA in his official capacity. At the time of

---

[8] The builders in Fox Mill are identified on B&B's web site as Abigail Homes, Cressida Builders, Inc., Dave Petersen Builder, Derrico Custom Homes, Graffagna Builders, Inc., Heffernan Builders, Homes by Hammersmith, J Carl Homes, Inc., Jim Dobbler Builder, Inc., McFarlane Construction, Inc., Robert Lord Builders, Inc., Sebern Homes, Southampton Homes, Inc., Stephen Lane Custom Homes, Tim Kobler Custom Homes

the bribe, BRIZUELA was a trustee of the WSD. A violation of 720 ILCS 5/33-1 is a class 2 felony and a RICO predicate act.

(c) On or about September 10, 2009 B&B and FMLP, in violation of 720 ILCS 5/33-1, B&B engaged in bribery of WSD official when it gave Defendant BRIZUELA an interest in real property (exhibits l) in an attempt to influence the performance of Mr. BRIZUELA in his official capacity. At the time of the bribe, BRIZUELA was a trustee of the WSD. A violation of 720 ILCS 5/33-1 is a class 2 felony and a RICO predicate act.

(d) B&B and FMLP directed the remaining defendants to submit fraudulent and false applications to the IEPA through the U.S. Mail and interstate telephone and telefax lines where they misrepresented the actual P.E.s transferred to HARRISON in order for HARRISON to gain approval for his Norton Farms Development. In reliance upon the false documentation the IEPA granted permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of dollars.

(e) From about 1994, and continuing throughout such time to the present, the Defendants B&B and FMLP, through its officers, agents and employees, falsely advised KOBLER and each other builder in FOX MILL that B&B and/or FMLP owned the rights to sell P.E.s as some type of commodity, when in fact B&B and/or FMLP did not have any interests in the P.E.s. (See exhibit ii) KOBLER and each and every prospective developer and builder was deceived by the fraudulent acts and paid B&B and/or FMLP for the P.E.s which were never owned by B&B and/or FMLP; (See exhibits N-P)

(f) On or about November 2001 B&B and GRIFFIN filed suit for defamation in the Circuit Court of Kane County against a private citizen, Richard S. Grozik, who criticized the capacity of the WSD. (See exhibit S). The sole purpose of this frivolous suit was to intimidate Richard Grozik and other members of the public from speaking out against the corruption of the B&B Family and the WSD.

(g) On or about December 1994, B&B filed suit for defamation in the Circuit Court of Kane County against a nonprofit citizen watch group (known as E-3) who criticized the capacity of the WSD. (See exhibit T). The sole purpose of this frivolous suit was to intimidate citizens from speaking out against the corruption of the B&B Family and the WSD.

(h) B&B Family has filed similar lawsuits against other private individuals and entities during all times relative herein, up to and including through 2009, in an attempt to intimidate and silence their critics and avoid further scrutiny.

(i) On or about December 11, 2008 B&B and FMLP did commit the offense of theft in violation of 720 ILCS 5/16-1 when they knowingly obtained unauthorized control over the property (P.E.s) of FIALA and other residents of the WSD. (See exhibit C) The value of each P.E. on December 11, 2008 was $10,000.00. The Defendant's violation of 720 ILCS 5/16-1 was a felony and a predicate act under RICO.

**BLOOD**

(j) At all times BLOOD controlled and directed the actions of B&B and FMLP as described in paragraphs 44 (a)-(i) set forth above. All of the actions of

B&B and FMLP described herein were at the direction of BLOOD & BOOSE.

(k) From 1996 to the present, BLOOD has used unwarranted threats of legal action against any and all critics of the WSD, B&B and FMLP in an effort to intimidate and silence the individuals and critics from speaking out in opposition to the actions of the Defendants. For example, on November 1, 1996 Boose threatened legal action against an elected public official of the WSD who was critical of the relationship and control B&B appeared to be exercising over one of the WSD trustees. (See exhibit BB). BLOOD continuously attempted to intimidate trustee Richard Dillon while Mr. Dillon served on the WSD. This pattern of using the legal system as a means of intimidation continues through today. (See exhibits S and T).

(l) On or about April 25, 2008, BLOOD, in violation of 720 ILCS 5/33-1, engaged in bribery of WSD official when he personally signed the documents which gave Defendant BRIZUELA an interest in real property (exhibits k) in an attempt to influence the performance of Mr. BRIZUELA in his official capacity. At the time of the bribe, BRIZUELA was a trustee of the WSD. A violation of 720 ILCS 5/33-1 is a class 2 felony and a RICO predicate act.

(m) BLOOD directed the remaining defendants to submit fraudulent and false applications to the IEPA (See paragraph 43(d)) through the U.S. Mail and interstate telephone and telefax lines in order for HARRISON to gain approval for his Norton Farms Development. In reliance upon the false and fraudulent documentation, the IEPA granted permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of

21

dollars. The acts of BLOOD above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(n) On or about December 11, 2008, BLOOD did commit the offense of theft in violation of 720 ILCS 5/16-1 when he knowingly obtained unauthorized control over the property (P.E.s) of FIALA and other residents of the WSD. (See exhibit C; see par. 27 & 28 of this complaint referencing exhibit ii) The value of each P.E. on December 11, 2008 was $10,000.00. The Defendant's violation of 720 ILCS 5/16-1 was a felony and a predicate act under RICO.

## BOOSE

(o) At all times BOOSE controlled and directed the actions of B&B and FMLP as described in paragraphs 44 (a)-(i) set forth above. All of the actions of B&B and FMLP described herein were at the direction of BOOSE & BLOOD.

(p) In June 2003 the WSD received a report from an engineering company that there was insufficient capacity in the WSD to connect Fox Creek, a proposed B&B development. (See exhibit CC). On August 1, 2003 BOOSE, without any known engineering degree, "recalculated" the available P.E.s in an attempt to show capacity. (See exhibit DD). On August 13, 2003 engineer Robert Anderson again concluded there was insufficient capacity for the B&B's new development. (See exhibit EE). Despite the engineer's reports to the contrary, and due to BOOSE'S influence over the WSD, the WSD approved the Fox Creek development. As part of BOOSE'S recalculations of the P.E.s, the WSD, at the direction of BOOSE, wrongfully took the P.E.s

owned by FIALA and other Homeowners in Fox Mill (see par. 27 & 28 of this complaint referencing exhibit ii), and gave them to B&B and FMLP for them to sell as commodities for their Fox Creek Development. The wrongful taking of property from FIALA and other residents of Fox Mill has continued from at least 2003 to the present date. The taking of property under color of law without just compensation is a violation of the State and Federal Constitution and a predicate act under RICO.

(q) BOOSE directed the remaining defendants to submit fraudulent and false applications to the IEPA (See paragraph 43(d)) through the U.S. Mail and interstate telephone and telefax lines in order for HARRISON to gain approval for his Norton Farms Development. In reliance upon the false documentation, the IEPA granted permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of dollars. The acts of BOOSE above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

### BRIZUELA

(r) On or about April 25, 2008, BRIZUELA did knowingly receive, agree to receive, and solicit a fee, kickback, commission, and a thing of value, that is, a recorded interest in real property with a value in excess of $500 (exhibit k) from B&B and FMLP in violation of 720 ILCS 5/33-1 and 50 ILCS 105/3, and with the intent to be influenced with respect to his actions, decisions and other duties as a trustee of the WSD and in relation to a matter concerning the Annexation of Property into the WSD for the financial benefit of the B&B

23

Family. A violation of 720 ILCS 5/33-1 or 50 ILCS 105/3 is felony and a RICO predicate act.

(s) On or about September 10, 2009, BRIZUELA did knowingly receive, agree to receive, and solicit a fee, kickback, commission, and a thing of value, that is, a recorded interest in real property with a value in excess of $500 (exhibit l) from B&B and FMLP in violation of 720 ILCS 5/33-1 and 50 ILCS 105/3, and with the intent to be influenced with respect to his actions, decisions and other duties as a trustee of the WSD and in relation to a matter concerning the Annexation of Property into the WSD for the financial benefit of the B&B Family. A violation of 720 ILCS 5/33-1 or 50 ILCS 105/3 is felony and a RICO predicate act.

(t) On or about April 29, 2009, BRIZUELA mailed a false and deceptive statement of economic interest to the Circuit Clerk of Kane County which was received and filed on May 1, 2009. (See exhibit G). The statement is false because it fails to mention that BRIZUELA received a gift in excess of $500 from B&B and FMLP (question 8). The filing of a false disclosure statement by a public official is mail fraud and a predicate act under RICO. The acts of BRIZUELA above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(u) BRIZUELA submitted fraudulent and false applications to the IEPA (See paragraph 43(d)) through the U.S. Mail and interstate telephone and telefax lines in order for HARRISON to gain approval for his Norton Farms Development. In reliance upon the false documentation, the IEPA granted

permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of dollars. The acts of BRIZUELA above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(v) At all relevant times herein, when BRIZUELA has served as a trustee on the WSD, BRIZUELA has directed applicants for WSD services, either directly or indirectly through WSD employees, to wrongfully pay B&B and FMLP a fee to hook up to the public utility services of the WSD (see par. 27 & 28 of this complaint referencing exhibit ii). These acts of the Defendant wrongfully deprived the plaintiff KOBLER and all other builders of property under color state of law, without notice or just compensation.

(w) On or about December 11, 2008, BRIZUELA did commit the offense of theft in violation of 720 ILCS 5/16-1 when he knowingly obtained unauthorized control over the property (P.E.s) of FIALA and other residents of the WSD. (See exhibit C, see par. 27 & 28 of this complaint referencing exhibit ii). BRIZUELA negotiated and directed the agreement (Exhibit C) to be drafted and facilitated the transfer and sale of stolen property to HARRISON. The value of each P.E. on December 11, 2008 was $10,000.00. The Defendant's violation of 720 ILCS 5/16-1 was a felony and a predicate act under RICO.

### SINDELAR

(x) On or about June 20, 2006, SINDELAR mailed a false and deceptive statement of economic interest to the Circuit Clerk of Kane County which was received and filed on June 23, 2006. (See exhibit Y). The statement is

25

false because it fails to mention that SINDELAR was an employee of B&B and/or FMLP and received income in excess of $1,200.00 in the preceding year (questions 5 & 6). The filing of a false disclosure statement by a public official is mail fraud and a predicate act under RICO. The acts of SINDELAR above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(y) On or about December 21, 2006, SINDELAR mailed a false and deceptive statement of economic interest to the Circuit Clerk of Kane County which was received and filed on March 19, 2007. (See exhibit Z). The statement is false because it fails to mention that SINDELAR was an employee of B&B and/or FMLP and received income in excess of $1,200.00 in the preceding year (questions 5 & 6). The filing of a false disclosure statement by a public official is mail fraud and a predicate act under RICO. The acts of SINDELAR above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(z) On or about May 16, 2008 SINDELAR filed a false and deceptive statement of economic interest to the Circuit Clerk of Kane County. (See exhibit AA). The statement is false because it fails to mention that SINDELAR was an employee of B&B and/or FMLP and received income in excess of $1,200.00 in the preceding year (questions 5 & 6). The filing of a false disclosure statement by a public official is mail fraud and a predicate act under RICO. The acts of SINDELAR above defrauded the voters of the WSD district,

including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(aa)SINDELAR submitted fraudulent and false applications to the IEPA (See paragraph 43(d)) through the U.S. Mail and interstate telephone and telefax lines in order for HARRISON to gain approval for his Norton Farms Development. In reliance upon the false documentation, the IEPA granted permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of dollars. The acts of SINDELAR above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(bb)  At all relevant times herein, when SINDELAR has served as a trustee on the WSD, SINDELAR has directed applicants for WSD services, either directly or indirectly through WSD employees, to wrongfully pay B&B and FMLP a fee to hook up to the public utility services of the WSD. (see par. 27 & 28 of this complaint referencing exhibit ii) These acts of the Defendant wrongfully deprived the plaintiff KOBLER and all other builders of property under color state of law, without notice or just compensation.

## SKIDMORE

(cc)On or about March 15, 2008 SKIDMORE mailed a false and deceptive statement of economic interest to the Circuit Clerk of Kane County which was received and filed on March 20, 2008. (See exhibit X). The statement is false because it fails to mention that SKIDMORE'S wife, Kim Skidmore, was an employee of B&B and/or FMLP and received income in excess of

lines in order for HARRISON to gain approval for his Norton Farms Development. In reliance upon the false documentation, the IEPA granted permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of dollars. The acts of SKIDMORE above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

## MUSCARELLO

(gg)     MUSCARELLO participated in the submission of fraudulent and false applications to the IEPA (See paragraph 43(d))  through the U.S. Mail and interstate telephone and telefax lines in order for HARRISON to gain approval for his Norton Farms Development. In reliance upon the false documentation, the IEPA granted permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of dollars. The acts of MUSCARELLO above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(hh)     On or about December 11, 2008 MUSCARELLO did commit the offense of theft in violation of 720 ILCS 5/16-1 when he knowingly[9] obtained unauthorized control over the property (P.E.s) of FIALA and other residents of the WSD.  (See exhibit C, see par. 27 & 28 of this complaint referencing exhibit ii).  MUSCARELLO thereafter negotiated and drafted the agreement (Exhibit C) and facilitated the transfer and sale of stolen property to

---

[9] See footnote 4.

HARRISON. The value of each P.E. on December 11, 2008 was $10,000.00. The Defendant's violation of 720 ILCS 5/16-1 was a felony and a predicate act under RICO.

### GRIFFIN

(ii) That on or about June 2008, and for a period thereafter, GRIFFIN, as an attorney and as the Vice President of B&B, did accept from HARRISON monies to represent HARRISON before the WSD to resurrect HARRISON'S previously failed attempts to annex into the WSD. The payment to GRIFFIN was a bribe to B&B to use their influence over the WSD to allow HARRISON'S project to get approval from the WSD. The bribe worked and HARRISON'S plan, previously submitted and rejected by the WSD, was now approved. B&B made millions as a result of the HARRISON approval by selling HARRISON the stolen P.E.s from FIALA and the other residents of the WSD. The above acts are violation of 720 ILCS 5/33-1 which is a class 2 felony and a RICO predicate act.

(jj) On or about November 2001, B&B and GRIFFIN filed suit for defamation in the Circuit Court of Kane County against a private citizen, Richard S. Grozik, who criticized the capacity of the WSD. (See exhibit S). The sole purpose of this frivolous suit was to intimidate Richard Grozik and other members of the public from speaking out against the corruption of the B&B Family and the WSD.

(kk) GRIFFIN participated in the submission of fraudulent and false applications to the IEPA (See paragraph 43(d)) through the U.S. Mail and interstate telephone and telefax lines in order for HARRISON to gain

approval for his Norton Farms Development. In reliance upon the false documentation, the IEPA granted permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of dollars. The acts of GRIFFIN above defrauded the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(ll) On or about December 11, 2008, GRIFFIN did commit the offense of theft in violation of 720 ILCS 5/16-1, when he knowingly obtained unauthorized control over the property (P.E.s) of FIALA and other residents of the WSD. (See exhibit C). GRIFFIN negotiated and drafted the agreement (Exhibit C) and facilitated the transfer and sale of stolen property to HARRISON. The value of each P.E. on December 11, 2008 was $10,000.00. The Defendant's violation of 720 ILCS 5/16-1 was a felony and a predicate act under RICO.

## HARRISON

(mm) On or about December 12, 2008, HARRISON did knowingly receive, agree to receive, and solicit a fee, kickback, commission, and a thing of value, that is, recorded interests in real property (exhibit S) from the B&B Family, located within the Fox Mill subdivision in which HARRISON knew or should have known the property interest he received was not owned by the B&B Family. Specifically, FMLP wrongfully held legal title to the aforesaid property, while the real owner of interest (equitable title) was the Fox Mill Homeowner's Association and/or the Kane County Forest Preserve. HARRISON knowingly took the gifted and stolen property belonging to another for the purpose of falsely securing a permit from the Village of

31

Campton Hills to build his development, Norton Farms. Specifically, HARRISON used the recorded interests he received to submit an application to the Village of Campton Hills for the development of Norton Farms. The B&B family deeded the property to HARRISON to ultimately secure a multimillion dollar payment from HARRISON to the B&B Family for HARRISON'S annexation into the WSD. (See exhibit C)

(nn) That on or about June 2008, and for a period thereafter, HARRISON did pay GRIFFIN, as an attorney, who at the same time was also the Vice President of B&B, to represent him before the WSD to resurrect his previously failed attempts to annex into the WSD. The payment to GRIFFIN was a bribe to B&B to use their influence over the WSD to allow HARRISON'S project to get approval from the WSD. The bribe worked and HARRISON'S plan, previously submitted and rejected by the WSD, was now approved. B&B made millions as a result of the HARRISON approval by selling HARRISON the stolen P.E.s from FIALA and the other residents of the WSD. The above acts are a violation of 720 ILCS 5/33-1, which is a class 2 felony and a RICO predicate act.

(oo) HARRISON participated in the submission of fraudulent and false applications to the IEPA (See paragraph 43(d)) through the U.S. Mail and interstate telephone and telefax lines in order for HARRISON to gain approval for his Norton Farms Development. In reliance upon the false documentation, the IEPA granted permits (See group exhibit J) and the Defendants B&B, FMLP, BOOSE and BLOOD made millions of dollars. The acts of HARRISON above defrauded the voters of the WSD district,

including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

(pp)    On or about December 11, 2008 HARRISON did commit the offense of theft in violation of 720 ILCS 5/16-1 when he knowingly obtained unauthorized control over the property (P.E.s) of FIALA and other residents of the WSD. (See exhibit C) The value of each P.E. on December 11, 2008 was $10,000.00. The Defendant's violation of 720 ILCS 5/16-1 was a felony and a predicate act under RICO.

## OTHER PREDICATE ACTS

(qq)    From about 1994, and continuing throughout such time to the present, the RICO Defendants, under the color of State authority, participated in an enterprise to deprive the residents served by the WSD the application and connections fees from third parties who sought services from the WSD. (see par. 27 & 28 of this complaint referencing exhibit ii)  These funds, slated for public use, upon information and belief, are in excess of $3,000,000.00, and should have been used to lower the operating and infrastructure costs of the WSD. Instead, the funds were wrongfully converted to private use, under color of State authority (WSD) for the benefit of the B&B Family, and each of its members.  In each instance in which the Defendants diverted public funds for private use as set forth herein, FIALA and others were deprived of the use of the funds which resulted in higher taxes and costs born by FIALA and other residents served by the WSD. Further, the sale of the P.E.'s by B&B and FMLP were actually the property of FIALA and other homeowners within the WSD, which were wrongfully taken under color of State Authority

without just compensation. In addition, the acts of the Defendants described herein adversely affect the health and welfare of the Plaintiffs and other citizens of the State of Illinois in that the Defendants scheme in wrongfully selling the WSD's P.E. includes wrongfully calculating the existing capacity of the WSD. This has resulted in selling approximately 5000 P.E.s to date of the WSD when in fact the WSD only has the capacity of 3160 P.E.s. (exhibit q) The resulting overcapacity has resulted in an illegal discharge into the waterways of Illinois, affecting the health and welfare of every citizen in the State of Illinois. (Exhibits e and HH)

(rr) From about 1994, and continuing throughout such time to the present, Defendants B&B, FMLP, GRIFFIN, BLOOD and BOOSE due to their control of the WSD, engaged in bribery where the trustees of the WSD would only approve the annexation requests of those developers who first paid B&B and/or FMLP and/or hired B&B's Vice President (GRIFFIN) as counsel. SKIDMORE, BRIZUELA, SINDELAR and MUSCARELLO, as trustees and agents of the WSD received financial benefits, both directly and indirectly, from these transactions, including but not limited to interest in real property, cash, employment and other valuable benefits; (See exhibits K-L, N-P)

(ss) From approximately 1998 and continuously to the present, the Defendant trustees (during the period while the Defendant Trustee served on the Board of the WSD) of the WSD wrongfully recalculated the available P.E. in the District at the direction of B&B and/or FMLP in order to provide higher profit (more available P.E. to sell) to B&B and/or FMLP, resulting in the WSD on paper showing under-capacity and resulting in the costs of

34

additional infrastructure to be born by Plaintiff FIALA and other residents serviced by the WSD (see exhibit q). This was done despite the fact that the WSD attorney, Defendant MUSCARELLO had previously advised the WSD that the WSD, and not B&B or FMLP owned the excess capacity of the WSD (See exhibit FF), and despite the fact the Defendants knew that B&B and FMLP were not entitled to *any* reimbursement under the 1994 annexation agreement. (see par. 27 & 28 of this complaint referencing exhibit ii);

(tt) All defendants in concert submitted fraudulent and false applications to the IEPA (See paragraph 43(d)) through the U.S. Mail and interstate telephone and telefax lines in order for HARRISON to gain approval for his Norton Farms Development. In addition, the fraudulent applications included the stolen P.E.s wrongfully taken from FIALA and others as described herein. In reliance upon the false documentation, the IEPA granted the permit. (See group exhibit J, GG). The acts of Defendants above defrauded the state of Illinois and the voters of the WSD district, including FIALA, out of their intangible right to the WSD trustees' honest services in violation of 18 U.S.C. §§ 1341 and 1346.

47. The enterprise and predicated acts of racketeering activity hereunder used the United States mail and/or other private express services, interstate telephone and telefax lines, cellular phones and internet transmissions, all of which constitute engaging in interstate commerce for the purpose of committing fraud and deceit, or conspiring to commit fraud or deceit, and to divest the Plaintiff and other residents residing within the WSD of million of dollars.

48. Each defendant named herein agreed that at least two of the racketeering acts alleged herein, would be committed by members of the conspiracy in the conduct of the affairs of the enterprise.

49. The Defendants concealed their wrongful conduct by the use of intimidation described herein. Anytime a citizen attempted to investigate or criticize the relationship between B&B/FMLP and the WSD, they were either sued, or were threatened to be sued by the B&B/FMLP.

50. The enterprise and predicated acts of racketeering activity hereunder were not discovered by Plaintiff FIALA until the spring of 2009 when FIALA and others on his behalf obtained copies of financial records and documents concerning HARRISON'S Norton Farms development from the WSD and the Village of Campton Hills through the Freedom of Information Act. Specifically, the December 2008 annexation agreement (Exhibit C) was obtained by FIALA in the Spring of 2009 and it was determined that B&B and FMLP were attempting to sell the WSD's excess capacity P.E.'s with the assistance and approval of the WSD. Exhibit C demonstrates that actual currency has changed hands between HARRISON and B&B and/or FMLP on or about December 2008, with a future payment pending. The WSD financial records were obtained by FIALA and on his behalf in the Fall of 2009 to determine how much money B&B and FMLP had already been reimbursed, at which time it was determined that the WSD had no records of any reimbursements. With no records of reimbursement, there are no public records available to determine how much B&B and/or FMLP have received to compensate them for the WSD system, and thus any such search would have been futile. Further investigation from the Spring of 2009 to the present revealed the conspiracy alleged herein. The transactions which comprise the conspiracy herein were intentionally

and fraudulently concealed by the Defendants due to the WSD failing to keep any records of the transactions in violation of Illinois law. As set forth above, Defendants have concealed the facts which form the basis for the cause of action and that the plaintiff remained in ignorance of those facts through no fault of his own.

51. The enterprise and predicated acts of racketeering activity hereunder were not discovered by Plaintiff KOBLER until the fall of 2009 when KOBLER was asked to review his records to provide copies of the connection applications and checks made payable to the WSD in order to connect the homes he was building in Fox Mill to the WSD. From approximately 1995 through August 2005 KOBLER built approximately 50 homes in Fox Mill. KOBLER was instructed by both the WSD, FMLP and/or B&B that KOBLER must pay B&B a connection fee to hook up to the WSD. (See e.g. exhibit o). When KOBLER inquired as to why he was required to pay FMLP and/or B&B, and not WSD, he was advised by B&B[10] and/or FMLP and the WSD that FMLP owned the rights to the WSD. As set forth above, with no records of reimbursement, there are no public records available to determine how much B&B and/or FMLP have received to compensate themselves for the WSD system, and thus any such search of public records would have been futile. The statements of the WSD and B&B/FMLP were false (see par. 27 & 28 of this complaint referencing exhibit ii) and were intended to deceive KOBLER and concealed the fact that FMLP and/or B&B had no right, by agreement, to sell connection rights or the P.E.s owned by the WSD. In actual and reasonable reliance on the statements of the WSD, and B&B/FMLP, as well the instructions provided to KOBLER by the WSD (exhibit o) and the application provided by the WSD (exhibit n), KOBLER

---

[10] KOBLER spoke with both BLOOD and BOOZE throughout the time KOBLER built his homes in Fox Mill and does not recall whether it was BLOOD, BOOZE or both of them that made this statement. This position of FMLP and B&B that they "owned the excess P.E." is also supported in other documentation attached hereto and upon information and belief other builders, and therefore is not at issue.

made numerous payments (see e.g. exhibit p) to FMLP and/or B&B in order to receive water and sewer services for the approximately 50 homes he was building. At no time did KOBLER have any knowledge of the scheme between the WSD and other defendants named herein to defraud him and the general public and reasonably relied upon the WSD and B&B to provide truthful responses to his inquiries and accurate instructions and applications. The transactions which comprise the conspiracy herein were intentionally and fraudulently concealed by the Defendants due to the WSD failing to keep any records of the transactions in violation of Illinois law. As set forth above, Defendants have concealed the facts which form the basis for the cause of action, and the plaintiff remained in ignorance of those facts through no fault of his own.

52. The pattern of racketeering activity involved in excess of seven hundred and fifty (750) predicate acts of bribery and mail fraud directly affecting the Plaintiffs, approximately 816 homes, in excess of 3000 people who are served by the WSD and in excess of 20 builders including KOBLER, HARRISON and all the other builders identified herein, and has occurred from 1994 through the date of this filing. From about 1995 to the present, upon information and belief, each and every permit issued by the WSD for connection to their system is predicated upon the fraudulent acts described herein.

**APPLICABLE PROVISIONS OF THE ILLINOIS REVISED STATUTES**

53. The Public Officer Prohibited Activities Act, 50 ILCS 105/3, provides in pertinent part:

§ 3. Prohibited interest in contracts.

(a) No person holding any office, either by election or appointment under the laws or Constitution of this State, may be in any manner financially interested directly in his own name or indirectly in the name of any other person, association, trust, or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. No such officer may represent, either as agent or otherwise, any person, association, trust, or corporation, with respect to any application or bid for any contract or work in regard to which such officer may be called upon to vote. Nor may any such officer

38

take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his vote or action in his official character. Any contract made and procured in violation hereof is void. This Section shall not apply to any person serving on an advisory panel or commission or to any director serving on a hospital district board as provided under subsection (a-5) of Section 13 of the Hospital District Law.

The Act also provides under 50 ILCS 105/4:

§ 4. Any alderman, member of a board of trustees, supervisor or county commissioner, or other person holding any office, either by election or appointment under the laws or constitution of this state, who violates any provision of the preceding sections, is guilty of a Class 4 felony and in addition thereto, *any office or official position held by any person so convicted shall become vacant, and shall be so declared as part of the judgment of court.* (emphasis added)

54. The Sanitary District Act of 1936, 70 ILCS 2805/1 *et seq.*, provides in pertinent part:

§ 3 (d) A majority of the board of trustees shall constitute a quorum but a smaller number may adjourn from day to day. No trustee or employee of such sanitary district shall be directly or indirectly interested in any contract, work or business of the district, or the sale of any article, the expense, price or consideration of which is paid by such district; nor in the purchase of any real estate or property belonging to the district, or which shall be sold for taxes or assessments, or by virtue of legal process at the suit of such district. Nothing in this Act shall be construed as prohibiting the appointment or selection of any person as trustee or employee whose only interest in the district is as an owner of real estate in the district or of contributing to the payment of taxes levied by such district. The trustees may provide and adopt a corporate seal for the district.

§ 19. All interest so paid shall be placed in the general fund of the district, to be used as other moneys belonging to such district raised by general taxation.

55. The Sanitary District Act of 1936 was amended on December 12, 1997 with the following provision added:

§ 8.1. Private funding of public sewers; reimbursement; contract. If one or more persons pay for building a sewer to be dedicated to the sanitary district as a public sewer, and if the sewer will, in the opinion of the board of trustees, be used for the benefit of property whose owners did not contribute to the cost of the sewer's construction, the board of trustees may provide for reimbursement of some or all of the expenses of the persons who paid for the sewer as provided in this Section. The board of trustees may, by contract, agree to reimburse the persons who paid for the sewer, in whole or in part, for a portion of their costs. The reimbursement

shall be made from fees collected from owners of property who did not contribute to the cost of the sewer when it was built. The contract shall describe the property that, in the opinion of the board of trustees, may reasonably be expected to use and benefit from the sewer and shall specify the amount of proportion of the cost of the sewer that is to be incurred primarily for the benefit of that property. The contract shall provide that the sanitary district shall collect the fees charged to owners of property not contributing to the cost of the sewer as a condition to the connection to and use of the sewer by the respective properties of each owner. The contract may provide for the payment of a reasonable amount of interest or other charge on the amount expended in completing the sewer, with interest to be calculated from and after the date of completion of the sewer. Nothing in this Section shall be construed to require an owner of property described in a contract to connect such property to the sewer or to pay a fee if such property is not connected to the sewer.

## COUNT I – RICO VIOLATION

1.-55    Plaintiffs incorporates by reference the allegations of paragraphs 1-55 as paragraphs 1-55 of Count I as if fully set forth herein.

56. As alleged herein with particularity, Defendants ROBERT SKIDMORE, RAUL BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN, JERRY BOOSE, KENNETH BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B ENTERPRISES and HUDSON HARRISON associated with the enterprise (WSD), and conducted or participated in the enterprises' affairs through a pattern of racketeering in violation of 18 U.S.C. §1962 (a) through (d).

57. As alleged herein with particularity, Defendants ROBERT SKIDMORE, RAUL BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN, JERRY BOOSE, KENNETH BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B ENTERPRISES and HUDSON HARRISON, and each of them, conspired with the other defendants in violation of 18 U.S.C. §1962 (a) through (d).

58. The Defendants ROBERT SKIDMORE, RAUL BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN, JERRY BOOSE, KENNETH

BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B ENTERPRISES have obtained, attempted and conspired to obtain property from KOBLER in the form of cash payments through the use of fraud, trickery and other illegal means.

59. The Defendants ROBERT SKIDMORE, RAUL BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN, JERRY BOOSE, KENNETH BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B ENTERPRISES have obtained, attempted and conspired to obtain property from FIALA in the form of P.E.s through the use of fraud, trickery and other illegal means.

60. The Defendants ROBERT SKIDMORE, RAUL BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN, JERRY BOOSE, KENNETH BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B ENTERPRISES and HUDSON HARRISON have obtained, attempted and conspired to obtain property from the WSD which was to be used for public purposes.

61. As a result of the conduct of ROBERT SKIDMORE, RAUL BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN, JERRY BOOSE, KENNETH BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B ENTERPRISES and HUDSON HARRISON, the public tax paying members of the WSD, and the owners of P.E.s within the WSD, including the Plaintiff FIALA, have been injured in excess of $3,000,000.00 in actual damages.

62. As a result of the conduct of ROBERT SKIDMORE, RAUL BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN, JERRY BOOSE, KENNETH BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B ENTERPRISES, the Plaintiff KOBLER, has been injured in excess of $150,000.00 in actual damages.

41

WHEREAS the Plaintiffs request this Court enter judgment in their favor for the actual damages suffered, as well as treble damages, attorney's fees and costs as provided for by 18 U.S.C. §1964(c), and any further relief this Court deems just and appropriate.

## COUNT II—DECLARATORY RELIEF

1-62.      Plaintiffs incorporate by reference the allegations of paragraphs 1-62 of Count I as paragraphs 1-62 of Count II as if fully set forth herein.

63. The remedies sought herein are requested because there are no adequate remedies at law.

### (PUBLIC TRUST DOCTRINE)

64. That the excess P.E.s of the WSD are held by the WSD for the public use.

65. That the WSD has permitted, encouraged and participated in the sale of the WSD's excess P.E.s by private parties (B&B and FMLP) which is inconsistent with its originally intended public use. That all the money collected by B&B and FMLP for the sale of the WSD's P.E.s was retained by B&B and FMLP for their personal use.

66. That the actions of the WSD are arbitrary, capricious and illegal.

67. That Plaintiffs ask this Court to make the following declarations and findings for the benefit of the Public:

  a) That all current excess P.E.s (if any) are the property of the WSD and can only be used for the benefit of the public; and

  b) That the annexation agreement for Norton Farms (exhibit C) be declared null and void as it is based upon the wrongful sale of public property;

  c) That the Fox Mill annexation agreement (exhibit A) does not permit FMLP or B&B to seek reimbursement for the costs of building certain infrastructure as alleged in paragraphs 21-24 above as the Sanitary District Act of 1936 had no

such provision in 1994 when exhibit A was executed (see also par. 27 & 28 of this complaint referencing exhibit ii);

d) That notwithstanding the amendment of the Sanitary District Act of 1936 in December of 1997 by adding §8.1, the excess P.E.s of the WSD still remained the property of the WSD, and to the extent any private entity would be entitled to reimbursement for the Private funding of public sewers erected after December 1997, such reimbursement must be done in accordance with the Act, which includes the requirement that the WSD collect the fees for reimbursement.

e) That the amendment to the Sanitary District Act of 1936 set forth in paragraph d) above does not apply retroactively to any project constructed prior to its enactment. Therefore, under no circumstances is FMLP or B&B entitled to recover any funds for the construction of the improvements set forth in paragraphs 21-24 above.

f) That all monies received by B&B, FMLP and the B&B Family as a result of the sale of the WSD's P.E.s be returned to the WSD or those persons from which they were wrongfully obtained, including but not limited to the Plaintiff KOBLER;

**(VIOLATION OF PUBLIC OFFICER PROHIBITED ACTIVITIES ACT)**

68. That each and every WSD Trustee is either directly or indirectly financially interested in all agreements entered into under the trustees' tenure which relate in any way to the sale or transfer of P.E.s to B&B and/or FMLP in violation of 50 ILCS 105/3.

69. That BRIZUELA has taken a gift from FMLP and/or B&B while doing business with FMLP and/or B&B and for the purpose of rewarding and influencing BRIZUELA in his official capacity in violation of 50 ILCS 105/3.

70. That pursuant to 50 ILCS 105/3 the Plaintiffs ask this Court to declare and find that:

43

    a)   all contracts entered into with FMLP and/or B&B by the WSD while one or more

        of the current WSD trustees was on the WSD Board are declared null and void;

        and

    b)   all contracts entered into with any third party in which FMLP and/or B&B

        received a direct benefit, including but not limited to the Norton Annexation

        Agreement (Exhibit C), be declared null and void.

**(VIOLATION OF 70 ILCS 2805/3(D) OF THE SANITARY DISTRICT ACT OF 1936)**

71. That each and every WSD Trustee is either directly or indirectly financially interested in

    all agreements entered into under the trustee's tenure which relate in any way to the sale

    or transfer of P.E.s to B&B and/or FMLP in violation of 70 ILCS 2805/3(d).

72. That due to the WSD trustees' violations of 70 ILCS 2805/3(d) the Plaintiffs ask this

    Court to declare and find that:

    a)   all contracts entered into with FMLP and/or B&B by the WSD while one or more

        of the current WSD trustee was on the WSD Board are declared null and void;

        and

    b)   all contracts entered into with any third party in which FMLP and/or B&B

        received a direct benefit, including but not limited to the Norton Annexation

        Agreement (Exhibit C), be declared null and void.

**(REMOVAL OF THE WSD TRUSTEES FROM PUBLIC OFFICE)**

73. That each of the WSD trustees has violated 50 ILCS 105/3.

74. That pursuant to 50 ILCS 105/4 the Plaintiffs ask this Court to remove each of the WSD

    trustees from office and to appoint a receiver until such time that a proper election can be

    had by the residents within the WSD.

### (ACCOUNTING)

75. That property of the WSD, including but not limited to the P.E.s and all facilities, are held in equity for the benefit of taxpayers such as Plaintiff FIALA.

76. That the sale of the P.E.s as set forth herein requires that the Defendants named herein account for all funds which have been transferred to them as a result of such sales.

77. That since the Defendants WSD, B&B and FMLP have proclaimed that B&B and/or FMLP is entitled to reimbursement for costs expended to construct certain waste water facilities described herein, these Defendants must account for all expenditures which they claim they are entitled to reimbursement should this Court determine any reimbursement is appropriate.

78. As such, the Plaintiffs request each defendant provide a complete accounting of financial transactions which touch upon the issues raised in this complaint.

WHEREAS the Plaintiffs request this Court enter judgment in their favor for equitable and declaratory relief requested, and any further relief this Court deems just and appropriate.

### COUNT III- COMMON LAW FRAUD

1-78. Plaintiffs incorporate by reference the allegations of paragraphs 1-78 of Count II as paragraphs 1-78 of Count III as if fully set forth herein.

79. The defendants have knowingly and wrongfully converted public property to private, personal use by the use of false statements, omissions and deception as described herein.

80. That the Defendants intended the Plaintiffs to rely upon their false statements and omissions, and upon reasonable reliance upon the acts and statements of the Defendants, the plaintiffs have been injured.

45

WHEREAS the Plaintiffs request this Court enter judgment in their favor for the actual damages suffered, as well as punitive damages, and costs, and any further relief this Court deems just and appropriate.

## COUNT IV—CIVIL CONSPIRACY (CONVERSION)

1-80.  Plaintiffs incorporate by reference the allegations of paragraphs 1-80 of Count III as paragraphs 1-80 of Count IV as if fully set forth herein.

81. The Defendants herein met and devised a plan to wrongfully and illegally deprive the Plaintiffs of their money and property.

82. That two or more of the defendants, in furtherance of the agreement of the Defendants as a whole, did in fact wrongfully obtain custody and control of the property of the Plaintiffs.

83. That the Plaintiffs were damaged as a result of the wrongful conduct of the Defendants' plans and actions.

WHEREAS the Plaintiffs request this Court enter judgment in their favor for the actual damages suffered, as well as punitive damages, and costs, and any further relief this Court deems just and appropriate

## COUNT V—REQUEST FOR PRELIMINARY INJUNCTION

1-83.  Plaintiffs incorporate by reference the allegations of paragraphs 1-83 of Count IV as paragraphs 1-83 of Count V as if fully set forth herein.

84. That pursuant to Norton Farms Annexation Agreement (exhibit C), HARRISON is to pay B&B $1,325,000.00 upon the Village of Campton Hills approval of the Norton Farms P.U.D. Upon information belief such approval could occur within the next 60 days.

85. That the Plaintiffs have an interest in the P.E.s which were allegedly sold, and therefore have a protectable interest in the $1,325,000.00.

86. The Plaintiffs will suffer irreparable harm if injunctive relief is not granted as the funds will be distributed to B&B. That upon information and belief B&B currently is a defendant in one or more civil cases filed by certain financial institutions for collections on debts in which in excess of $20,000,000.00 is being sought.

87. That Plaintiffs' remedy at law is inadequate and that there is a strong likelihood of success on the merits.

WHEREAS the Plaintiffs request this Court enter judgment in their favor and either enjoin HARRISON from making any further payments to B&B, including but not limited to the aforesaid $1,325,000.00, or in the alternative to deposit those funds, when due, with the Court or other entity to be held until further order of this Court, and any further relief this Court deems just and appropriate.

Respectfully submitted,
**NEWMAN RAIZ, LLC**

James P. Newman, Esq.

James P. Newman, Esq. - 6220404
**NEWMAN RAIZ, LLC**
2570 Foxfield Road, Suite 201
St Charles, IL 60174
(312) 580-9000

**EXHIBIT ii**

James P. Newman, Esq. - 6220404
**NEWMAN RAIZ, LLC**
2570 Foxfield Road, Suite 201
St Charles, IL 60174
(312) 580-9000

2004K080488

SANDY WEGMAN
RECORDER
KANE COUNTY, IL

RECORDED ON
06/18/2004  09:27AM

REC FEE:  92.00
PAGES:  71

# CONSTRUCTION AND REIMBURSEMENT AGREEMENT

## By and Between:

## WASCO SANITARY DISTRICT AND
## FOX MILL LIMITED PARTNERSHIP

This Document prepared by
and after recordation return to:

Charles V. Muscarello
**DENKER & MUSCARELLO, LLC**
4N701 School Road
St. Charles, Illinois  60175
Telephone: 630-513-9191
Facsimile: 630-524-9141

POOR ORIGINAL
Recorder Not Responsible
For Reproductions

## CONSTRUCTION AND REIMBURSEMENT AGREEMENT

THIS Construction and Reimbursement Agreement entered into this ~~8nt~~ day of ~~June~~ 2004 by and between the Wasco Sanitary District, P.O. Box 9, Wasco, Illinois 60183 (hereinafter "District") and Fox Mill Limited Partnership, 40W320 LaFox Road, Suite E, St. Charles, Illinois 60175 (hereinafter "Fox Mill") (hereinafter "Construction and Reimbursement Agreement").

### WITNESSETH:

**WHEREAS,** on or about April 24, 1994, District and Fox Mill entered into an Annexation, Construction of Wastewater Facilities and Water Facilities, and Service Agreement which was recorded as document number 94K039023 (hereinafter "Annexation Agreement");

**WHEREAS,** on or about June 13, 1996 the District and Fox Mill entered into the First Amendment to the Annexation Agreement;

**WHEREAS,** on or about June 26, 1997 the District and Fox Mill entered into the Second Amendment to the Annexation Agreement;

**WHEREAS,** on or about April 8, 1999 the District and Fox Mill entered into the Third Amendment to the Annexation Agreement;

**WHEREAS,** on or about February 8, 2001 the District and Fox Mill entered into the Fourth Amendment to the Annexation Agreement;

**WHEREAS,** on or about April 8, 2004 the District and Fox Mill entered into an Extension Agreement extending the terms of the Annexation Agreement for an additional year;

**WHEREAS,** at the time of the execution of the Annexation Agreement, the Sanitary District Act of 1936 (hereinafter "Sanitary District Act") (70 ILCS 2805/1 *et seq.*) did not provide for the reimbursement to an entity who dedicated improvement to facilities to the District;

**WHEREAS,** effective December 12, 1997, Section 8.1 of the Sanitary District Act (70 ILCS 2805/8.1) was inserted which allows for the private funding of public sewers with the right of reimbursement to that private funding entity;

**WHEREAS,** the District has received fee simple title to 34 acres the legal description of which real estate is attached hereto and incorporated herein as Exhibit A – 34 Acre Irrigation Parcel from Fox Mill for irrigation of treated effluent to fulfill and complete the irrigation requirements as set forth in the Fox Mill Annexation Agreement and for future development within the District (hereinafter "34 Acre Irrigation Parcel");

**WHEREAS,** the District is without the funds necessary to complete the improvements to the 34 Acre Irrigation Parcel;

**WHEREAS,** Fox Mill is obligated to provide the additional irrigation and is responsible for the costs of improvements to said 34 Acre Irrigation Parcel;

**WHEREAS,** the 34 Acre Irrigation Parcel will provide sufficient irrigation capacity to satisfy the Fox Mill Annexation Agreement and additionally shall provide enough irrigation capacity to serve the Prairie Lakes Parcel (hereinafter "Prairie Lakes Parcel"), the legal description of which is attached hereto and incorporated herein as Exhibit B – Prairie Lakes Legal Description and the Fox Creek Parcel (hereinafter "Fox Creek Parcel"), the legal description of which is attached hereto and incorporated herein as Exhibit C – Fox Creek Legal Description;

**WHEREAS,** Fox Mill intends to pay for and construct sufficient improvements necessary on the 34 Acre Irrigation Parcel to both fulfill the requirements set forth in the Fox Mill Annexation Agreement and to also serve the intended uses of the Prairie Lakes Parcel and Fox Creek Parcel;

**WHEREAS,** Fox Mill shall dedicate the improvements to the District for the District to operate once completed;

**WHEREAS,** Fox Mill maintains the right to seek reimbursement from the Prairie Lakes Parcel and Fox Creek Parcel for their respective portions of the cost of improvements to the 34 Acre Irrigation Parcel;

**WHEREAS,** the District shall allow Fox Mill to pay for and construct such improvements to the 34 Acre Irrigation Parcel and to seek reimbursement for the respective portions of such costs from the Prairie Lakes Parcel and Fox Creek Parcel pursuant to Section 8.1 of the Sanitary District Act (70 ILCS 2805/8.1).

**NOW THEREFORE,** in consideration of mutual promise agreement covenants and undertakings set forth herein, the adequacy and sufficiency of which consideration the parties hereby acknowledge, the parties agree as follows:

1.      **INCORPORATION OF PREAMBLES:** The parties hereby incorporate the

recitals contained in the preambles as provisions of this Agreement and find the same to be true

and correct.

2.      **IMPROVEMENTS TO BE CONSTRUCTED AND DEDICATED:**     Fox

Mill shall construct, pay for and upon the completion  and acceptance thereof by District,

dedicate at no cost to the District, (i) the irrigation facilities on the 34 Acre Irrigation Parcel as

set forth in the Irrigation Facilities Improvements and (ii) such sanitary sewers, water distribution

system and treated effluent main as set forth in the Sewers and Mains Improvements (hereinafter

"Sewers and Mains Improvements"), as attached hereto and incorporated herein as Exhibit D –
Irrigation Facilities Improvements. The standards and specifications of the Irrigation Facilities
Improvements are subject to the approval of the District and the District's engineer. The costs to
be paid by Fox Mill for improving and constructing the Irrigation Facilities Improvements, shall
include all of the costs described herein, but are not limited to, all reasonable engineering,
surveying and architectural expenses for design and construction of the Irrigation Facilities
Improvements as well as all reasonable construction costs, financing costs, application fees, legal
and other reasonable professional fees, all materials, land and easements. Fox Mill hereby
agrees to transfer or cause to be transferred, free and clear of all liens and encumbrances, all their
right, title and interest in and to said sanitary sewers, drains, or other facilities for sewers and
drains to the District, by executing a Bill of Sale therefore in favor of the District. The District
hereby agrees upon satisfactory inspection and receipt of a one (1) year maintenance bond and
such contractors' affidavits and lien waivers as it may request, it will accept said Bill of Sale.

3. **CONSTRUCTION EASEMENT TO FOX MILL:** The District agrees to
grant to Fox Mill, without charge, the necessary easements and right of way permits as may be
required across or on the District's property for the construction and installation of the Irrigation
Facilities Improvements and Sewer and Mains Improvements as may be reasonably required,
provided (i) any such right-of-way permit or easement shall not unreasonably interfere with
District's installations or use of its owned or controlled property, and (ii) Fox Mill agrees that
Fox Mill's rights pursuant to this paragraph shall at all times remain subordinate to District's
rights, particularly those relative to obtaining grants and financing any improvements. Fox Mill,
at its expense, agrees to repair and replace in accordance with the original sizes, standards or
topography, any District property damaged or disturbed by reason of its work in connection with
the foregoing in a manner satisfactory to the District, and shall provide District with a bond in

form, amount and from a provider reasonably acceptable to District to guaranty payment and performance of such obligation. The Easements thought to be necessary are attached hereto an incorporated herein as Exhibits E – Grant of Temporary Construction Easement on Irrigation Site and Exhibit F – Grant of Temporary Construction Easement on Wastewater Treatment Plant. Any additional easements deemed necessary shall be granted by the District in substantially the same form as Exhibits E – Grant of Temporary Construction Easement on Irrigation Site and Exhibit F – Grant of Temporary Construction Easement on Wastewater Treatment Plant.

4. **REIMBURSEMENT TO FOX MILL:**

**Benefited Parties**

4.1. The Prairie Lakes Parcel and the Fox Creek Parcel (herein collectively "Benefited Parties") shall benefit from the construction and dedication of the Irrigation Facilities Improvements and Sewers and Mains Improvements, in that such additional capacity resulting from the Irrigation Facilities Improvement to be constructed by Fox Mill shall also provide wastewater and water capacity to the respective Benefited Parties parcels.

4.2. Fox Mill shall be entitled to the reimbursement by the Benefited Parties for the respective portion of the expense to construct and dedicate the Irrigation Facilities Improvements equal to the respective portion of the additional water and wastewater capacity to be realized and utilized by the respective Benefited Parties. The determination of the amount of reimbursable expenses and the respective percentage of reimbursement by the Benefited Parties shall be made upon the actual costs and actual percentages of usage as determined by the District.

**Collection of Reimbursable Expense**

4.3. Upon the completion and dedication of the Irrigation Facilities Improvements, at the request of Fox Mill, the District shall collect form all Benefited Parties the

5

amount of the reimbursable expense to Fox Mill form each Benefited Party, prior to that Benefited Party being entitled to any connection permits to the District. The District shall then reimburse Fox Mill the applicable amount.

4.4.    Fox Mill agrees that the reimbursement process as provided herein shall comply with Section 8.1 of the Sanitary District Act (70 ILCS 2805/8.1) as determined by the District.

5.    **LIMITED LIABILITY:**    The payments required of the District to Fox Mill for the Reimbursable Expense from the Benefited Properties hereunder shall be payable solely from the revenues derived under this Agreement from the Benefited Properties and shall not constitute an indebtedness of the District, or any political subdivision thereof, or a loan of the credit thereof, within the meaning of any constitutional or statutory provision and the holders of this Agreement shall have no right to compel the exercise of the taxing power of the District, or any political subdivision thereof to pay any amounts due hereunder.

6.    **HOLD HARMLESS AND INDEMNIFICATION:**    In the event a third-party claim is made against the District, its officers, other officials, consultants, agents and employees or any of them, is made a party defendant in any proceeding arising out of or in connection with this Agreement, the approval and construction of the Irrigation Facilities Improvements or Sewers and Mains Improvements, including matters pertaining to hazardous materials and other environmental matters, Fox Mill shall, [except as may be required by Section 1 of the Construction Contract Indemnification for Negligence Act (Illinois Compiled Statutes, 1998, Ch. 740, ¶. 60.90 *et seq.*) and Section 1 of the Lessor's Liability Act (Illinois Compiled Statutes, 1998, Ch. 765, ¶. 705/0.01 *et seq.*) or except for gross negligence or willful misconduct] defend and hold the District such officers, other officials, agents and employees harmless from

all claims, liabilities, losses, taxes, judgments, costs, fees, including expenses and reasonable attorneys' fees, in connection therewith, in excess of the proceeds of any insurance or indemnification held by the District and actually received. Any such indemnified person may obtain separate counsel to participate in the defense thereof at his own expense. The District and such officers, other officials, agents and employees shall cooperate in the defense of such proceedings and be available for any litigation related appearances which may be required. Further, Fox Mill shall be entitled to settle any and all claims for money, in such amounts and upon such terms as to payment as it may deem appropriate, without the prior approval or consent of the District, its officers, other officials, agents and employees as the case may be, provided the District shall not be required to contribute to such settlement. Further, Fox Mill may be entitled to settle all non-monetary claims upon such terms as it may deem appropriate after receiving approval or consent of the District, which approval or consent shall not be unreasonably withheld, provided such settlement shall not cost the District or add to its expenses. In the event District unreasonably withholds such approval or consent Fox Mill's obligation to indemnify and defend shall terminate.

7. **BINDING EFFECT AND TERM:** This Agreement shall be binding upon and inure to the benefit of the parties hereto, successors in interest, assignees, lessees, and upon any successor municipal authorities of the District, future Board of Trustees, and successor sanitary Districts.

8. **COVENANT RUNNING WITH THE LAND:** This Agreement constitutes a covenant running with the land against Exhibit B - Prairie Lakes Legal Description and Exhibit C – Fox Creek Legal Description and shall be recorded in the Office of Kane County Recorder of Deeds.

9.    **SEPARABILITY:**    The provisions hereof shall be deemed to be separable; and if any section, paragraph, clause, provision or item herein shall be held invalid, the invalidity of such section, paragraph, clause, provision, or item shall not affect any other provision hereof; provided, however, the District shall under no circumstances be required to incur any liability or loss or incur any expense for any reason in the even that any such section, paragraph, clause, provision or item is held invalid.

10.    **RIGHTS AND REMEDIES:**    In the event either party fails to comply with any of the terms or conditions of this Agreement, either party shall have the following rights and remedies available to it: (a) Self help, (b) Injunctive relief without bond, (c) Monetary damages, and (d) Attorney's fees, costs and expenses. The above rights and remedies are cumulative. The exercise or use of any one or more thereof shall not bar either party from exercise or use of any other right or remedy provided herein or otherwise provided by law, nor shall exercise nor use of any right or remedy by either party waive any other right or remedy. Any injunctive relief granted to the District shall be without bond.

IN WITNESS WHEREOF, Fox Mill and District have caused this Agreement to be executed, acknowledged and attested by the undersigned, this _____3rd_____ day of _____June_____, 2004.

Wasco Sanitary District

By: _____
      Patrick Collins, President

ATTEST:

By: _____
      Thomas Peterson, Clerk

Fox Mill Limited Partnership, By
KANE COUNTY LAND COMPANY,
GENERAL PARTNER

By: _____
Its: _____ Vice President

ATTEST:

By: _____
Its: _____

9

STATE OF ILLINOIS  )
                   ) SS
COUNTY OF KANE     )

I, the undersigned, a Notary Public in an for said County, in the State aforesaid, DO HEREBY CERTIFY that Patrick Collins is personally known to me to be the President of the Wasco Sanitary District and Thomas Peterson personally known to me to be the Clerk of the Wasco Sanitary District whose name is subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and seal this ____ day of _____, 2004

"OFFICIAL SEAL"
LESLIE A. CUDZILO
COMMISSION EXPIRES 06/02/0_

Notary Public

STATE OF ILLINOIS  )
                   ) SS
COUNTY OF KANE     )

I, the undersigned, a Notary Public in an for said County, in the State aforesaid, DO HEREBY CERTIFY that _Charlie Blood_ is personally known to me to be the VICE PRESIDENT OF THE _General Partner_ of the Fox Mill Limited Partnership and _Jerry Boose_ personally known to me to be the SECRETARY/TREASURER OF THE _General Partner_ of the Fox Mill Limited Partnership whose name is subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and seal this _8th_ day of _June_, 2004

Notary Public

"OFFICIAL SEAL"
PATRICK M. GRIFFIN
Notary Public, State of Illinois
My Commission expires November 13, 2007