09-799-3969

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ED FIALA, individually, and on behalf of other similarly situated persons who reside within the Wasco Sanitary District and TIM KOBLER CUSTOM HOMES, INC., | |
| Plaintiffs, | No.    10 –CV-2895 |
| v. | Judge:   Hon. Feinerman<br>Room:   1725 |
| WASCO SANITARY DISTRICT, ROBERT SKIDMORE, RAUL BRIZUELA, GARY SINDELAR, CHARLES V. MUSCARELLO, PATRICK GRIFFIN, JERRY BOOZE, KENNETH BLOOD, FOX MILL LIMITED PARTNERSHIP, B&B ENTERPRISES and HUDSON HARRISON, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION TO CLARIFY THIS COURT'S OPINION OF MARCH 16, 2012

NOW COMES the plaintiffs, ED FIALA and TIM KOBLER CUSTOM HOMES, by and through their attorneys, James P. Newman & Associates, LLC, and moves this Honorable Court to Clarify its Opinion of March 16, 2012.  In support thereof, the Plaintiffs' state as follows:

### BACKGROUND

On March 16, 2012, this Court issued a 19 page opinion, granting Defendants' motions to dismiss the Plaintiffs' federal RICO claims and relinquishing jurisdiction over the remaining state law claims.  Observing that "the direct victim of Defendants' scheme" was the Wasco Sanitary District, thus making said District the appropriate RICO plaintiff (see Memorandum Opinion at 13), the Court concluded that the named plaintiffs were not sufficiently victimized to have attained RICO standing.  With respect to Plaintiff Fiala specifically, the Court

acknowledged that Illinois law dictated that 3.5 PEs be assigned to Fiala's single-family home. (See Memorandum Opinion at 8). The Court dismissed the plaintiffs' view of PEs as property, however, preferring to view PEs as a means of measuring capacity and concluding that Fiala's PEs were "not property and cannot have been taken or stolen from him." (See Memorandum Opinion at 9). It is the very real confusion among the parties as to the meaning of this last statement by the Court which necessitates the present motion for clarification.

## LEGAL STANDARD

Although the Federal Rules do not explicitly provide for motions to clarify, such requests are routinely (and loosely) brought pursuant to Rule 60 of the Federal Rules of Civil Procedure. See, e.g., Titus v. Illinois Department of Transportation, 2012 U.S. Dist. LEXIS 2590, *8-9 (N.D.Ill. Jan. 5, 2012) (clarifying order where Court's statement regarding redundancy of claims created question as to survival of certain claims); Canon U.S.A., Inc. v. Nippon Liner System, Ltd., 1991 U.S. Dist. LEXIS 12126, *9-11 (N.D.Ill. Aug. 30, 1991) (denying motion to reconsider under Rules 59 and 60 but granting clarification of opinion where defendant misinterpreted legal significance of wording in Court's opinion). Rule 60(a) affords the Court with the authority to correct a mistake "arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Notably, this provision is not limited to clerical errors. Indeed, substantial modifications by the Court are permissible where the purpose is to "merely clarify the court's intentions and parties' understandings." United States v. Mansion House Center North Redevelopment Co., 855 F.2d 524, 527 (8th Cir. 1988). See Caterpillar Financial Services Corp. v. The F/V Site Clearance, 2008 U.S. App. LEXIS 8982, *15 (4th Cir. April 25, 2008) ("As we have recognized, Rule 60(a) is properly utilized 'to perform a completely ministerial task' (such as 'making a judgment more

specific in the face of an original omission'), but not to 'revisit the merits of the question' or 'reconsider[] the matter.''), quoting <u>Kosnoski v. Howley</u>, 33 F.3d 376, 379 (4th Cir. 1994). Moreover, Rule 60(b) offers additional authority for a clarification order by the Court, enumerating various scenarios for applicability, including a catchall, for "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Plaintiffs' submit that, under Rule 60(a) or (b), or any additional authority this Court deems appropriate, simple clarification is justified and necessary as to the three related issues detailed below.

## THE PLAINTIFFS REQUEST THAT THIS COURT CLARIFY ITS MARCH 16, 2012 ORDER TO MORE CLEARLY STATE THAT IF PEs ARE NOT PROPERTY WHICH CAN BE TAKEN FROM FIALA, THEN PEs SIMILARLY ARE NOT PROPERTY WHICH CAN BE SOLD OR TRANSFERRED BY DEFENDANTS

This Court's March 16, 2012 Opinion holds that there is "no legal authority for the proposition that a PE is property belonging to a homeowner." (<u>See</u> Memorandum Opinion at 7). More specifically, the Court asserts that "Fiala's PEs are not property and cannot have been taken or stolen from him."  (<u>See</u> Memorandum Opinion at 9).  The plaintiffs have presented evidence by way of recorded covenants, bill of sales, and even the IEPA regulations concerning the construction of single family homes that if anyone "owns" the PEs in question, it is unquestionably the homeowner (<u>i.e.,</u> Fiala). After all, each of these documents and regulations indicate that Fiala's single family home has assigned to it 3.5 PEs, and that these PEs "run with the land."

Since this Court's minute order of March 25, 2011, granting Defendants' Motion to Dismiss, Defendant B&B has attempted to exercise control over "additional" PEs, using said PEs as consideration to support the settlement of a multimillion dollar suit. (<u>See</u> attached Exhibit A,

page 5). B&B tries to be clever and call the PEs "connection permits," but the release and exhibits attached thereto clearly equate the "connection permits" to the 3.5 PEs needed to build a single family home. Further, B&B, as a private company, has no authority to issue permits on behalf of a municipal utility.

Clearly, by selling PEs to Harrison and assigning PEs to a plaintiff in a multimillion dollar suit as consideration to support settlement, B&B is attempting to exercise control over the PEs and is using the PEs as a valuable commodity in the process. Because the issue of ownership rights to the capacity and PEs is an issue in the state law claims which have been remanded, the plaintiffs ask this Court to clarify (or cement) its finding that PEs are not property. Without such clarification, it is a certainty that B&B will claim that this Court's memorandum and judgment establishes that B&B has the right to sell, transfer and/or otherwise dispose of PEs (or connection permits, or whatever new and creative moniker B&B devises for WSD capacity) which are the subject matter of this litigation. The WSD is also struggling with this issue. At the last public WSD meeting on April 19, 2012, noting that the agreement between Defendants Harrison and B&B states "[a]s of such date, purchasers shall be deemed to own 132.5 PE of wastewater capacity," the WSD Board was clearly struggling with the implications of this Court's current finding (that PEs are not property) as they were seeking to resolve several state law matters which are currently being litigated in Kane County. (See exhibit B, April 19, 2012 transcript from WSD meeting, page 95-96.) The WSD also indicated at that meeting that "PEs" and "capacity" were interchangeable.

More precisely, the plaintiffs interpret this Court as finding that PEs are not property which can be owned. By anyone. The logical extension of this, which plaintiffs will present to the Circuit Court on remand, is that since a PE is not property, a PE cannot be bought or sold, as

there is no <u>ownership</u> interest to transfer. Thus, as the WSD trustees and lawyer pondered based upon this Court's decision: "*Fox Mill never owned the capacity; therefore, I'm not sure what they actually sold to Norton.*" <u>Id</u>. at page 97. Accordingly, Mr. Harrison paid millions of dollars for nothing and the proposed settlement agreement (Exhibit A) is not supported by consideration.

**PLAINTIFFS REQUEST THIS COURT EITHER TO DECLARE THAT PEs, CONNECTION PERMITS, AND CAPACITY ARE SYNONYMOUS TERMS OR PROVIDE THAT SUCH FINDING SHALL BE LEFT FOR THE CIRCUIT COURT ON REMAND**

As this Court is aware, in 2008, Mr. Harrison agreed to pay $2.65 million to B&B for sufficient wastewater "capacity" for the homes Harrison was seeking to build in Norton Farms. (<u>See</u> Memorandum Opinion at 4). As indicated above, B&B recently settled a multi-million dollar lawsuit by using B&B's rights to any undeveloped WSD "connection permits" within Fox Mill as partial consideration. <u>See</u> Exhibit A. As was true of the "capacity" being sold for the single family homes to be built in Norton Farms, it is clear that these latest "connection permits" are but another pseudonym for the 3.5 PEs that were already designated for each of the nearly 700 single family lots in Fox Mill as part of the 1994 Annexation agreement.

Once again, plaintiffs interpret this Court's March 16, 2012 Order as holding that PEs are not property which can be stolen, bought, or traded as a commodity by anyone. Along these lines, this Court expressly found that PEs instead represent a unit of measurement designed to measure the flow of wastewater. (<u>See</u> Memorandum Opinion at 8). These PEs represent a portion of the WSD's overall capacity (which, at present is 3160 PEs). PEs are thus inextricably tied to capacity, which is inextricably linked to connection permits, which are essentially records of the PEs allocated. As these terms relate to the WSD's finite ability to service its customers, these are measurement terms which are virtually interchangeable. As it pertains to the Wasco Sanitary

5

District, this clarification is critical, as WSD has refused to allow Harrison's development to move forward due in part to capacity issues and/or a lack of available PEs.

## PLAINTIFFS REQUEST THIS COURT TO DECLARE THAT ED FIALA'S PROPERTY STILL HAS AND HAS ALWAYS HAD (SINCE 1994) 3.5 PEs

In its March 16, 2012 Opinion, this Court found that, pursuant to Illinois law, single family dwellings (like Mr. Fiala's) were designated 3.5 PEs. (See Memorandum Opinion at 8). The Court stated that "the 3.5 PEs assigned to Fiala's single-family home do nothing more, and nothing less, than designate the amount of wastewater the home is presumed to generate. This designation, in turn, is used to estimate the Fiala home's impact on the District's treatment capacity and surrounding environment." (See Memorandum Opinion at 8). Observing, among other things, that Mr. Fiala could not sell a PE to a neighbor, the Court likewise opined that Mr. Fiala could not have a PE taken from him either. (See Memorandum Opinion at 9). If the P.E. was not taken from him, then it must still be assigned to his lot as required by Illinois law.

The plaintiffs interpret the Court's statements to conclude that Mr. Fiala's property retains the 3.5 PEs designated to it, and that these 3.5 PEs (as a measurement representing a 3.5/3160 portion of WSD's present capacity) cannot be diminished or taken from his property. The plaintiffs request the Court to clarify its findings on this issue, as B&B has continued to broker WSD capacity and/or connection permits for its own benefit, leaving WSD with substantial questions regarding its available capacity/PEs. Because the WSD has a finite amount of capacity, much of which has already been assigned to residents such as Fiala, the Court's clarification on this critical issue is of grave importance.

To be clear on the transferability issues of the P.E.s, the plaintiffs' sur response provided this Court with a copy of the Declaration of Covenants, Conditions and Restriction, filed on July

26, 1994 with the Kane County Recorder of Deeds, 94K058911 . These covenants provide that "[e]ach residential dwelling unit erected upon SUBJECT REALTY (Fox Mill) shall be ***conclusively*** assumed to have a minimum population equivalent of 3.5 P.E...." (Emphasis added), and "All provisions of this agreement, including the ***benefits*** and burdens, ***run with the land*** and are binding upon and inure to the parties hereto and all their grantees, successors in interests, assignees and lessees." (Emphasis added). [1] Thus, consistent with this Court's finding that P.E.s are not property that can be stolen, bought or sold, the plaintiffs ask this Court to declare that Ed Fiala's 3.5 P.E.'s, once assigned to his lot by the WSD, "run with the land" in perpetuity. Such a clarification will greatly assist the parties and the State Court in resolving the remaining issues which are left to be litigated.

## CONCLUSION

In sum, the plaintiffs request three simple clarifications with respect to the Court's Opinion on March 16, 2012.

1.      PEs are not property that can be bought, stolen, or taken by anyone.

2.      As they are all means of measuring the overall capacity of the Wasco Sanitary District, PEs, capacity, and connection permits are interchangeable concepts. In the alternative, to the extent that this Court believes this to be a factual determination, this issue should be determined by the state court.

3.      Mr. Fiala's single-family property still has, has always had, and always will have 3.5 PEs.

---

[1] See exert, attached as exhibit C.

Plaintiffs believe that these clarifications adequately reflect the Court's March 16, 2012 Opinion and hope that they will help to eliminate the confusion which now exists among the parties and facilitate the ultimate disposition of this case. Plaintiffs' pray that this Court grant its motion to clarify the Court's March 16, 2012 Opinion.

Sincerely,
**JAMES P. NEWMAN & ASSOCIATES, LLC**

_____

James P Newman

James P. Newman, Esq.
**JAMES P. NEWMAN & ASSOCIATES, LLC**
2570 Foxfield Rd, Suite 201
St Charles, IL 60174
(630) 587-8300

# EXHIBIT A

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

THIS MUTUAL RELEASE AND SETTLEMENT AGREEMENT ("Agreement") dated this __13th__ day of __MAY__ , 2011 (the "Effective Date"), is entered into between FOX MILL MASTER HOMEOWNERS ASSOCIATION, INC., an Illinois not-for-profit corporation (the "Plaintiff" or "Plaintiff HOA"); and FOX MILL LIMITED PARTNERSHIP, an Illinois limited partnership, KANE COUNTY LAND COMPANY, an Illinois corporation, B&B ENTERPRISES, an Illinois partnership, B&B LAND SERVICES, INC., an Illinois corporation, BARLOW WOODS, INC., an Illinois corporation, CSC PROPERTIES, INC., an Illinois corporation, 4N645 SCHOOL ROAD PARTNERS, LLC, an Illinois limited liability company, KEN BLOOD, an individual, CHARLIE BLOOD, an individual, SARAH BLOOD, an individual, now known as Sarah Griffin, GEORGE INSLEE, an individual, SANDRA BLOOD, an individual, EMIL MINISCALCO, an individual, RAUL BRIZUELA, an individual, CAROLINE BLOOD, an individual, now known as M. Caroline Brizuela, GARY SINDELAR, an individual, PATRICK GRIFFIN, an individual, JERRY BOOSE, an individual, KENNETH KEENON, an individual, and MELANIE KEENON, an individual (collectively, "Defendants"). The Plaintiff and the Defendants' are collectively referred to as the Parties.

## RECITALS

A.     WHEREAS, Plaintiff is an Illinois not-for-profit-corporation organized as a homeowners association for the purpose of administering the residential common interest community known as the Fox Mill Subdivision in Campton Township, Kane County, Illinois (the "Fox Mill Subdivision"). A map depicting the Fox Mill Subdivision is attached hereto as **Exhibit "A,"** and is incorporated herein; and

EXHIBIT

**B.** **WHEREAS**, each and every lot owner within the Fox Mill Subdivision is a member of the Plaintiff HOA; and

**C.** **WHEREAS**, Plaintiff and Defendants are (or, in the case of some Defendants, were) parties to a lawsuit originally filed on February 2, 2010, in the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois as Case No. 10 L 51, which lawsuit was dismissed as to all Defendants by the trial court, and which dismissal was appealed by Plaintiff, and is now pending in the Second District Appellate Court of Illinois as Case No 2-10-1208 (collectively, the "Lawsuit"); and

**D.** **WHEREAS**, the allegations and claims contained in the Lawsuit consist, in whole or in part, of allegations and claims concerning:

(1)    Defendants' involvement, if any, in the development of the Fox Mill Subdivision;

(2)    Defendants' involvement, if any, in the management of the Fox Mill Subdivision;

(3)    Defendants' involvement, if any, as Board Members of the Plaintiff HOA;

(4)    Defendants' involvement, if any, as Board Members of the various unit homeowners associations within the Fox Mill Subdivision, including The Farmstead of Fox Mill Homeowners Association, Inc., an Illinois not-for-profit corporation (the "Farmstead HOA"), The Hamlet of Fox Mill Homeowners Association, Inc., an Illinois not-for-profit corporation (the "Hamlet HOA"), The Commons of Fox Mill Homeowners Association, Inc., an Illinois not-for-profit corporation (the "Commons HOA"), and The Settlement of Fox Mill Homeowners Association, Inc. (the "Settlement HOA"), an Illinois not-for-profit corporation (collectively, the "Unit HOAs");

(5)    Defendants' involvement, if any, as a lawyer for the Plaintiff HOA, for the Unit HOAs and for certain other Defendants;

(6)    Defendants' involvement, if any, in the receipt of, retention of, or realization of any benefits regarding, real or personal property within or relating to the Fox Mill

Subdivision and the Plaintiff or Unit HOAs, including but not limited to the following: (a) any and all leases, mortgages, deeds and easements with respect to such property, including with respect to all or any portion of the property identified as PIN # 08-26-200-019, and (b) any and all landscape equipment utilized within the Fox Mill Subdivision, including but not limited to mowers, edgers, engines, blowers and tree gators; and

(7)     the validity and applicability of certain bylaws, including those documents entitled the "Amended Bylaws" and "Second Amended Bylaws" of the Plaintiff HOA and the Unit HOAs;

all of which allegations and claims are set forth in Counts I through IX of Plaintiff's Amended Complaint at Law. Collectively, the above-described allegations and claims (1) through (7), as well as each and every allegation contained in the Lawsuit, and any allegation and claim which could have been brought in the Lawsuit, whether by Plaintiff, by others derivatively through Plaintiff, by individual owners in the Fox Mill Subdivision, or by any other individual or entity pertaining to the foregoing, shall be referred to as the "Released and Barred Claims;" and

E.     **WHEREAS**, the Parties, by execution of this Agreement, desire to settle and resolve all Released and Barred Claims in accordance with the terms of this Agreement:

**NOW, THEREFORE**, in consideration of the mutual promises, agreements, and covenants contained herein, the receipt and sufficiency of which is hereby mutually acknowledged by the Parties, each intending to be legally bound hereby, the Parties incorporate the "Whereas" clauses herein as if fully set forth below, and further agree as follows:

## AGREEMENT

1.     <u>**Defendants' Non-Contingent Consideration**</u>: Defendants' Non-Contingent consideration to Plaintiffs shall consist of the following:

<u>Real Property</u>: A deed conveying the public open space parcels within the Fox Mill

Page 3 of 14

Subdivision to the Fox Mill Master Homeowners Association, Inc., which deed shall be delivered to Plaintiff or its attorney within ten (10) business days after receipt of a title commitment for such public open space parcels. Plaintiff shall accept the deed subject to standard title exceptions, and subject to all conveyance requirements contained in the development approvals for the Fox Mill Subdivision, and Plaintiff expressly acknowledges and accepts that some or all of the open space parcels may be required to be conveyed to the Forest Preserve District of Kane County, or its designee. It is the intent of the Parties that the entirety of the public open space parcels within the Fox Mill Subdivision be conveyed to Plaintiff pursuant to this provision, and the Parties hereby agree to execute any and all deeds and other documents (and additional or amended deeds and documents, if necessary) to accomplish this purpose. The Parties agree that any and all real estate tax obligations for the years 2010 and prior shall be shared equally between Plaintiff and Defendants up to a maximum of $10,000, and that the Defendants shall be solely liable for any such obligations beyond $10,000. The Plaintiff's maximum exposure for such liabilities shall be $5,000.

2. **Defendants' Contingent Consideration**: Defendants' Contingent Consideration to Plaintiff shall consist of the following:

A. <u>Cash</u>: Subject to the provisions of Paragraph 2E below, one hundred thousand dollars ($100,000) in the form of a cashiers check, money order, insurance company check, or law firm IOLTA check, payable to the Fox Mill Master Homeowners Association, Inc., which shall be delivered to Escrowee within ten (10) business days

of the Effective Date.

B.    Sewer and Water Connection Permits: Subject to the provisions of Paragraph 2E below, an assignment, substantially in the form set forth in **Exhibit "B"** attached hereto, assigning the Wasco Sanitary District sewer and water connection permits for seven (7) lots within the Fox Mill Subdivision (lots 470, 467, 485, 531, 588, 589 and 602) and eight (8) lots within the Fox Creek Subdivision (lots 5, 6, 33, 36, 37, 38, 40 and 42) for which such permits have not already been issued or assigned, which shall be delivered to Escrowee within ten (10) business days of the Effective Date. The Parties agree that should any connection permit fees be paid or received during the contingency period set forth in Paragraph 2E hereof, said fees shall immediately be deposited with Escrowee.

C.    Release of Defense and Indemnification Rights: Subject to the provisions of Paragraph 2E below, a release of all claims for defense and indemnification against Plaintiff for this Lawsuit only. Defendants expressly reserve all other rights of defense and indemnification as provided for in any of the declarations, covenants and bylaws applicable to the Fox Mill Subdivision, or any part thereof, as well as any other rights to defense or indemnification allowed by law. Defendants additionally agree to release all claims for defense and indemnification against Plaintiff for Case No. 10 L 434 and Case No. 10 L 735 provided the contingencies set forth in Paragraphs 2E(i) and 2E(ii) are satisfied within the time-frames provided therein.

D.    Release of Other Claims: Subject to the provisions of Paragraph 2E below, a release of all other claims against Plaintiff arising out of this Lawsuit only.

Page 5 of 14

E.  <u>Contingent Nature of Consideration</u>. Defendants' Contingent Consideration identified in Paragraphs 2A through 2D shall not become effective unless and until all of the following Conditions Precedent are satisfied:

    (i)    Within twelve (12) months of the Effective Date, Case No. 10 L 434 is either: (a) involuntarily dismissed with prejudice, and all rights of appeal are terminated such that the dismissal has the effect of *res judicata*; or (b) the case is voluntarily dismissed with prejudice subject to terms and conditions approved in writing by Defendants.

    (ii)    Within twelve (12) months of the Effective Date, Case No. 10 L 735 is either: (a) involuntarily dismissed with prejudice, and all rights of appeal are terminated such that the dismissal has the effect of *res judicata*; or (b) the case is voluntarily dismissed with prejudice subject to terms and conditions approved in writing by Defendants.

    (iii)    The twelve (12) month time-frames required in Paragraphs 2E(i) and 2E(ii) shall automatically be extended in six (6) month increments, up to a maximum of four (4) such extensions, provided Plaintiff is abiding by its continuing affirmative obligations pursuant to Paragraph 3B herein to seek dismissal of Case Nos. 10 L 434 AND 10 L 735.

F.  <u>Escrowee</u>. Any contingent Consideration that is deliverable hereunder to the Escrowee shall be delivered to Chicago Title Insurance Company, Geneva, Illinois, or such other escrow agent as is mutually agreed upon between the Parties ("Escrowee"), who shall hold such Contingent Consideration pursuant to the terms

of this Agreement, and subject to any escrow instructions as may be mutually agreed to between the Parties. Any interest which may accrue on any Contingent Consideration held by Escrowee shall accrue solely to the benefit of the Defendants. Any Contingent Consideration held by Escrowee shall remain free and clear of any and all claims of Plaintiff, or anyone acting by, through or on behalf of Plaintiff, whether derivatively or otherwise, except as expressly set forth herein. In the event any claim shall be made against the Escrowee prior to the satisfaction of the Conditions Precedent, Escrowee shall be immediately authorized and required to return the Contingent Consideration to Defendants or their attorney or other designee without any further action required of the Parties.

G.     <u>Failure to Satisfy Conditions Precedent</u>.  In the event the Conditions Precedent are not satisfied within twelve (12) months of the Effective Date, or within such extended time frames as set forth in Paragraph 2E(iii), Escrowee shall be immediately authorized and required to return the Contingent Consideration to Defendants or their attorney or other designee without any further action required by the Parties, and Defendants shall have no further obligations to Plaintiff hereunder. Such failure to satisfy the Conditions Precedent shall have no effect on the validity of the remainder of the terms of this Agreement.

3.     <u>Plaintiff's Consideration</u>: Plaintiffs' consideration to Defendants shall consist of the following, which shall become effective immediately and permanently upon Defendants' delivery of the deed for the Real Property described in Paragraph 1 herein:

A.     <u>Release of Released and Barred Claims</u>: A release of all Released and Barred

Claims.

   B.   <u>Duty to Seek Dismissal of Pending Claims</u>: Plaintiff shall affirmatively participate in seeking the dismissal of Case Nos. 10 L 434 (except for Count X thereof, or any successor count which asserts solely individual claims) and 10 L 735. Plaintiff's affirmative duty shall include, but not be limited to, filing an appearance in each case and actively participating in defeating the claims alleged therein through all proper legal means.

   4.   **Mutual Releases**:   In consideration of the mutual promises, agreements and covenants and consideration contained herein, the Parties, on behalf of themselves and their respective predecessors in interest, assignors, successors, assigns, representatives, agents, shareholders, members, partners, insurers and attorneys, do hereby absolutely, fully and forever, release, relieve, waive, relinquish and discharge each other Party and their respective predecessors in interest, assignors, successors, assigns, representatives, agents, shareholders, members, partners, insurers and attorneys of and from any and all manner of actions causes of action, suits, debts, deficiencies, demands, defaults, claims, obligations, costs, expenses, sums of money, controversies, damages, accounts and reckonings relating to or arising out of any act or occurrence up to the present time, known or unknown, direct or indirect, claimed or unclaimed, suspected or unsuspected, choate or inchoate, liquidated or unliquidated, contingent or determined, in law or in equity, arising out of or related to the Lawsuit, <u>except for</u> each party's right to enforce the terms of this Agreement.

   5.   **Plaintiff's Release of Barred Claims**: Without limiting the scope of the foregoing Mutual Release, Plaintiff <u>expressly and specifically</u> agrees to release all Released Barred Claims, as defined herein, and it is Plaintiff's intention that such release shall have the effect of *res judicata* to

the fullest extent permitted by law.

6.   **Plaintiff's and Defendants' Duty to Defend this Agreement**:   Plaintiff and Defendants shall be obligated hereunder to affirmatively defend against any claims, demands, damages, lawsuits, or other actions challenging the validity or enforceability of this Agreement, or any portion thereof.  Plaintiff's and Defendant's affirmative duty shall include, but not be limited to, filing an appearance in each such case, and actively participating in defeating the claims alleged therein through all proper legal means.

7.   **Entire Agreement**: The Parties declare and represent that no promise, inducement or agreement not herein expressed has been made to them.  This Agreement contains the entire agreement between the Parties regarding the subject matter hereof and all prior understandings, representations and agreements concerning the subject matter hereof, whether verbal or written, are superceded hereby.

8.   **Dismissal With Prejudice**:  Upon execution of this Agreement by all of the Parties, the Parties shall jointly direct that an Order be entered in the appropriate court dismissing all claims with prejudice and barring all Barred Claims.  The Parties expressly intend that such an order have the effect of *res judicata* with respect to all Released and Barred Claims.

9.   **Attorneys Fees and Costs**:  The Parties agree that each shall be responsible for its own attorneys fees and costs incurred in this matter.  However, in the event it becomes necessary for either Party hereto to bring an action to enforce the provisions of this Agreement, then the prevailing Party in such action shall be entitled to reasonable costs and attorneys fees incurred in bringing such action.

10.   **Construction**. This Agreement shall be construed equally against the Parties, without

regard to which Party or Parties drafted the Agreement or any portion thereof. The Parties acknowledge that all Parties have been represented by legal counsel of their choice, and that all Parties have contributed to the content of this Agreement.

11. <u>**Advice of Counsel**</u>: The Parties represent that by executing this Agreement, they have either sought and received the advice of counsel, or have been given the opportunity to do so.

12. <u>**Successors and Assigns**</u>: This Agreement shall be binding on and shall inure to the benefit of the Parties hereto and their respective predecessors in interest, assignors, successors, assigns, representatives, agents, shareholders, members, partners, insurers and attorneys.

13. <u>**Choice of Law**</u>: This Agreement shall be governed by and construed under the laws of the State of Illinois, and venue shall be in the Sixteenth Judicial Circuit, Kane County, Illinois.

14. <u>**Retention of Jurisdiction**</u>: This Court shall retain jurisdiction of this matter for purposes of enforcing the terms of this Agreement.

15. <u>**Authority**</u>: The Parties hereto hereby each represent and warrant that each is authorized to execute this Agreement, and that all action necessary to be taken to execute this Agreement has been taken, and that there are no other consents or authority required.

16. <u>**No Third Party Beneficiary**</u>: This Agreement is entered into solely between the Parties who have executed the Agreement. The Agreement is not intended to, and shall not, confer any rights or duties on any third party, and any releases contained herein shall only be deemed a release of the Party designated, and in no event shall be deemed a release of any person or entity who has not executed this Agreement.

17. <u>**Severability**</u>. In the event any one or more of the provisions of this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such

invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had never been contained herein, unless the deletion of such provision or provisions would result in such a material change so as to cause completion of the transactions contemplated herein to be unreasonable.

18.    **Execution:**  This Agreement may be executed in one or more counterparts, all of which, when taken together, shall constitute one and the same instrument.

**IN WITNESS WHEREOF,** the Parties place their signatures hereon as set forth below:


FOX MILL MASTER HOMEOWNERS ASSOCIATION, INC.,
an Illinois, not-for profit corporation

By: _____     Date: _____
     Its President

Attested By: _____     Date: _____
          Its Secretary


FOX MILL LIMITED PARTNERSHIP,
an Illinois limited partnership, by Kane County Land Company

By: _____     Date: 5-13-11
     Its President


KANE COUNTY LAND COMPANY,
an Illinois corporation

By: _____     Date: 5-13-11
     Its President


Page 11 of 14

B&B ENTERPRISES,
an Illinois general partnership, by CSC Properties

By:_____          Date: 5-13-11
    Its President


B&B LAND SERVICES, INC.,
an Illinois corporation, n/k/a Bomber Land Care, Inc.

By:_____          Date: 5/17/11
    Its President  Vice president


CSC PROPERTIES, INC.,
an Illinois corporation

By:_____          Date: 5-13-11
    Its President


4N645 SCHOOL ROAD PARTNERS, LLC,
an Illinois limited liability company

By:_____          Date:_____
    Its President


KEN BLOOD,
an individual, a/k/a C. Kenneth Blood

By:_____          Date: 5-13-11


CHARLIE BLOOD,
an individual, a/k/a Charles K. Blood

By:_____          Date: 5-12-11


SARAH BLOOD,
an individual, n/k/a Sarah L. Griffin

By:_____          Date: 5-13-11

B&B ENTERPRISES,
an Illinois general partnership, by CSC Properties

By:_____     Date:_____
      Its President

B&B LAND SERVICES, INC.,
an Illinois corporation, n/k/a Bomber Land Care, Inc.

By:_____     Date:_____
      Its President

BARLOW WOODS, INC.,
an Illinois corporation

By:_____     Date:_____
      Its President

CSC PROPERTIES, INC.,
an Illinois corporation

By:_____     Date:_____
      Its President

4N645 SCHOOL ROAD PARTNERS, LLC,
an Illinois limited liability company

By:_____     Date: 5/16/11
      Its President

KEN BLOOD,
an individual, a/k/a C. Kenneth Blood

By:_____     Date:_____

Page 12 of 14

GEORGE INSLEE,
an individual

By:_____          Date: 5/13/11

SANDRA BLOOD,
an individual

By:_____          Date:_____

EMIL MINISCALCO,
an individual

By:_____          Date:_____

RAUL BRIZUELA,
an individual

By:_____          Date:_____

CAROLINE BLOOD,
an individual, n/k/a M. Caroline Brizuela

By:_____          Date:_____

GARY SINDELAR,
an individual

By:_____          Date:_____

PATRICK GRIFFIN,
an individual

By:_____          Date: 5-12-11

GEORGE INSLEE,
an individual

By:_____     Date:_____


SANDRA BLOOD,
an individual

By:_____     Date:_____


EMIL MINISCALCO,
an individual

By:_____     Date:_____


RAUL BRIZUELA,
an individual

By:_____     Date:_____


CAROLINE BLOOD,
an individual, n/k/a M. Caroline Brizuela

By:_____     Date:_____


GARY SINDELAR,
an individual

By:_____     Date: 5/13/11


PATRICK GRIFFIN,
an individual

By:_____     Date:_____

GEORGE INSLEE,
an individual

By:_____          Date:_____

SANDRA BLOOD,
an individual

By:_____          Date:_____

EMIL MINISCALCO,
an individual

By:_____          Date:_____

RAUL BRIZUELA,
an individual

By:_____          Date: 5-13-11

CAROLINE BLOOD,
an individual, n/k/a M. Caroline Brizuela

By:_____          Date:_____

GARY SINDELAR,
an individual

By:_____          Date:_____

PATRICK GRIFFIN,
an individual

By:_____          Date:_____

GEORGE INSLEE,
an individual

By:_____     Date:_____

SANDRA BLOOD,
an individual

By: *Sandra Blood*_____     Date: 5-13-11

EMIL MINISCALCO,
an individual

By:_____     Date:_____

RAUL BRIZUELA,
an individual

By:_____     Date:_____

CAROLINE BLOOD,
an individual, n/k/a M. Caroline Brizuela

By: x _____     Date: 5-12-11

GARY SINDELAR,
an individual

By:_____     Date:_____

PATRICK GRIFFIN,
an individual

By:_____     Date: 5-13-11

JERRY BOOSE,
an individual

By: _____     Date: 5/12/11

KENNETH KEENON,
an individual

By: _____     Date: 5/13/11

MELANIE KEENON,
an individual

By: _____     Date: 5/13/11

BARLOW WOODS, INC.

By: _____     Date: 5/13/11
    Its President Secretary

PLANNED UNIT DEVELOPMENT FOR:

FOX MILL

CAMPTON TOWNSHIP, KANE COUNTY, ILLINOIS

EXHIBIT

A

tabbies®



CAMPTON HISTORICAL SOCIETY



# EXHIBIT B

## ASSIGNMENT OF RIGHTS TO CONNECTION PERMITS

WHEREAS, Fox Mill Limited Partnership ("FMLP") is party to a certain Annexation, Construction of Wastewater Facilities and Water Facilities and Service Agreement dated April 7, 1994, recorded in the office of the Kane County Recorder as Document No. 94K039026 (the "Fox Mill Annexation Agreement"), as amended; and

WHEREAS, pursuant to the Fox Mill Annexation Agreement, FMLP owned certain rights to sewer and water capacity, including rights to "Connection Permits" as set forth in the Fox Mill Annexation Agreement; and

WHEREAS, FMLP assigned its rights with respect to such Connection Permits within Unit 1 of the Fox Creek Subdivision to Fox Creek Limited Partnership ("FCLP"), as further set forth pursuant to the Water and Wastewater Service Agreement and Restrictive Covenant for Unit 1 of Fox Creek dated April 8, 2004, recorded in the Office of the Kane County Recorder as Document No. 2004K066432 (the "Fox Creek Unit 1 Agreement"); and

WHEREAS, FMLP assigned its rights with respect to such Connection Permits within Unit 2 of the Fox Creek Subdivision to FCLP, as further set forth pursuant to the Water and Wastewater Service Agreement and Restrictive Covenant for Unit 2 of Fox Creek dated April 8, 2004, recorded in the Office of the Kane County Recorder as Document No. 2004K167054 (the "Fox Creek Unit 2 Agreement"); and

WHEREAS, FMLP assigned the remainder of all of its rights to such Connection Permits, including those within the Fox Mill Subdivision, to B&B Enterprises, as set forth in the Bill of Sale and Assignment of Rights between FMLP and B&B Enterprises dated November 15, 2007; and

WHEREAS, B&B Enterprises is the General Partner of Fox Creek Limited Partnership ("FCLP"); and

WHEREAS, on December 31, 2007, FCLP assigned all of the remainder of its rights with respect to such Connection Permits within the Fox Creek Subdivision to B&B Enterprises; and

WHEREAS, pursuant to the terms and conditions of that certain Mutual Release and Settlement Agreement (the "Settlement Agreement") to which this Exhibit B is attached, B&B Enterprises has agreed to assign to the Fox Mill Master Homeowners Association, Inc. (the "Fox Mill HOA"), all of its right, title and interest in and to any remaining Connection Permits within the Fox Mill and Fox Creek subdivisions;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged the Parties hereto agree as follows:

1.      <u>Assignment of Rights to Connection Permits</u>.  B&B Enterprises hereby assigns to the Fox Mill HOA all of its right, title and interest in and to the remaining Fox Mill Subdivision and Fox Creek Subdivision Connection Permits, consisting of the following lots, collectively (the "Assignment"):

2.     <u>Acceptance of Assignment of Reimbursement Payments</u>. The Fox Mill HOA hereby accepts the Assignment.

3.     <u>Cooperation in Collection of Connection Permit Fees</u>. B&B Enterprises and Fox Mill HOA agree to cooperate in executing any and all documents and taking all other actions which are reasonable and necessary to carry out the intent of the Assignment.

4.     <u>No Prior Assignments or Security Interests</u>. B&B Enterprises hereby represents and warrants that it has not previously assigned any right, title or interest in or to the Connection Permits included within the Assignment.

5.     <u>Authority</u>. B&B Enterprises hereby represents and warrants that it is authorized to make the Assignment called for herein, and that all action necessary to be taken to execute this Assignment has been taken, and that there are no other consents or authority required.

6.     <u>Governing Law</u>. The Parties agree that this Assignment shall be governed by and interpreted in accordance with the laws of the State of Illinois and that venue for any disputes shall be Kane County, Illinois.

7.     <u>Signatures</u>. The Parties each agree that faxed or emailed signatures are effective and shall serve to bind the Parties to this Assignment.

8.     <u>Binding Agreement</u>. This Assignment shall inure to and be binding upon the Parties and successors and assigns of the Parties.

9.     <u>Counterparts</u>. This Assignment may be executed in several counterparts, each of which shall be deemed an original, and all of which shall constitute but one and the same instrument. For purposes of this Assignment, facsimile and scanned signatures shall be considered the same as original signatures and shall be treated as valid and binding upon the Parties hereto.

WHEREFORE, the Parties hereto have placed their signatures hereon as set forth below.

FOX MILL MASTER HOMEOWNERS ASSOCIATION, INC.,
an Illinois, not-for profit corporation

By: _____     Date: 5/11/11
    Its President

Attested By: _____     Date: 5/11/11
       Its Secretary

B&B ENTERPRISES,
an Illinois general partnership, by CSC Properties

By: _____     Date _____
    Its President

# EXHIBIT B

1

1      S61219

2

**CERTIFIED ORIGINAL**

STATE OF ILLINOIS    )

3                         )   SS.

COUNTY OF K A N E    )

4

5          BEFORE THE WASCO SANITARY DISTRICT

              BOARD OF TRUSTEES

6

7      In Re the Matter of:      )

                           ) April 19, 2012

8      Regular Meeting.         )

9          REPORT OF PROCEEDINGS had in the

10    above-entitled matter, before the Wasco Sanitary

11    District Board of Trustees, taken in the offices

12    of Wasco Sanitary District, Well House #2,

13    40W250 LaFox Road, St. Charles, Illinois, on

14    April 19, 2012, at the hour of 7:30 p.m.

15

16

17

18

19

20

21

22

23

24

2

```
 1        PRESENT:
 2             MR. RYAN STRAUSS, President;
 3             MR. THOMAS BIHUN, Vice-President; and
 4             MR. ROBERT SKIDMORE, Trustee.
 5        ALSO PRESENT:
 6             MR. GREG CHISMARK, District Engineer;
 7             MR. CHARLES FOULKES, Wasco Sanitary District
           Staff;
 8
           MR. JASON FOWLER, District Operations;
 9
           MR. MATTHEW WILSON, District Operations; and
10
           DYKEMA GOSSETT, PLLC, by
11
           MR. DAVID J. BRESSLER,
12
           Suite 300
13         4200 Commerce Court
           Lisle, Illinois 60532
14         (630) 245-0400
15                  appeared on behalf of Wasco Sanitary
                District.
16
17
18
19
20
21
22
23
24
```

REPORT OF PROCEEDINGS -- 04/19/2012

95

1    know?  That's part of -- part of that.

2                    PRESIDENT STRAUSS:  So here is -- you

3    know, I'm not a lawyer -- I don't really want to

4    be one -- but the way I look at it is that the

5    annexation agreement provided for a way to get

6    reimbursed when the District decided to expand

7    outside the current footprint, if you will, of

8    the District; right?  So they have a vehicle for

9    providing Fox Mill to get reimbursed for the

10   infrastructure that they built originally; right?

11       But to -- what Bressler is saying -- and I

12   agree with him -- that's not what they did here.

13   Why didn't they just use that vehicle?  It seems

14   very odd that we would circumvent that vehicle so

15   that they could sell capacity, which is what they

16   did.  They sold the capacity to Norton.

17                    VICE PRESIDENT BIHUN:  I think they

18   sold PE.  I don't know.

19                    MR. BRESSLER:  Well, if you look at

20   the addendum to the capacity agreement, there is

21   a provision that the Judge apparently didn't pay

22   attention to.  It says, "As of such date,

23   purchasers shall be deemed to own 132.5 PE of

24   wastewater capacity," so that sentence says that

REPORT OF PROCEEDINGS -- 04/19/2012

96

1    "Well, whether they sold it or not, somebody owns

2    something."

3        Anyways, maybe they didn't own PE, they

4    owned the capacity, but it seems there it's being

5    used interchangeably.

6        Anyways, I think we've beaten this horse to

7    death.  I've answered the question on Exhibits O

8    and P.

9        Is there anything you guys want me to do on

10   that question?

11       VICE PRESIDENT BIHUN:  I think we

12   should table it to the closed session.

13       MR. BRESSLER:  Well, under what?

14       MR. FOULKES:  You can't.

15       MR. BRESSLER:  There's no pending

16   litigation on this specific issue.

17       VICE PRESIDENT BIHUN:  On this

18   specific issue.

19       PRESIDENT STRAUSS:  Well, part of me

20   would like to -- although I think we're just

21   wasting money to do it -- is to have you weigh in

22   on whether or not Fox Mill owned capacity, but we

23   already have the lawyer who is providing an

24   opinion, the District's very own lawyer, so I

SONNTAG REPORTING SERVICE, LTD.
sonntagreporting.com - 800.232.0265

REPORT OF PROCEEDINGS -- 04/19/2012

97

```
1          don't know why we would do that again.

2                    TRUSTEE SKIDMORE:  And just --

3                    PRESIDENT STRAUSS:  So it seems to me

4     that the -- that -- that based on the evidence

5     that I have -- right? -- that Fox Mill never

6     owned the capacity; therefore, I'm not sure what

7     they actually sold to Norton.

8          Does that seem reasonable from a legal

9     standpoint?

10                   MR. BRESSLER:  That's the question in

11    my mind.

12         I guess somehow it will be answered at a

13    later date.

14              Anyways --

15                   MR. FOULKES:  Does 12 stay on?

16                   PRESIDENT STRAUSS:  12?  No.

17                   TRUSTEE SKIDMORE:  No.

18                   MR. FOULKES:  It's done?

19                   PRESIDENT STRAUSS:  That's done.

20                   MR. BRESSLER:  You've got to move to

21    accept my report regarding the reimbursement

22    agreement.

23                   PRESIDENT STRAUSS:  Move to accept

24    the report regarding the reimbursement agreement.
```

# EXHIBIT C

4/07/94

## ARTICLE II

## USE RESTRICTIONS

On and after the date hereof, title to the SUBJECT REALTY shall be subject to the following covenants to run with the land which are restrictive covenants applicable to all of the property described in Exhibit 1. No use of the SUBJECT REALTY shall be permitted which does not comply with the following minimum restrictions unless otherwise approved by the DISTRICT:

(a) The land use will not result in wastewater facility usage which will exceed the maximum of 2,748 population equivalent (hereinafter the "P. E."). Each residential dwelling unit erected upon SUBJECT REALTY shall be conclusively assumed to have a minimum population equivalent of 3.5 P.E. or in other words, a usage for wastewater facilities including sanitary sewer of 350 gallons per day (100 gallons per day per person). In the event state or federal requirements specify a greater P.E. per unit, the larger number shall prevail. In the event state and federal requirements specify a lesser P.E. per unit, the smaller number shall prevail. The determination of whether the usage will exceed 2,748 P.E. shall be made by the engineer for the Wasco Sanitary District.

(b) Non-residential land uses or residential uses of the SUBJECT REALTY other than single-family residential dwelling units shall be assigned a P.E. by the DISTRICT'S Engineer determined in accordance with state and federal requirements, the ordinances,

0907 0372

9450X446

- 3 -

3

4/07/94

## ARTICLE IV

### MISCELLANEOUS

(1) All provisions of this agreement, including the benefits and burdens, run with the land and are binding upon and inure to the parties hereto and all of their grantees, successors in interest, assignees, and lessees.

(2) Except as expressly limited herein, DECLARANTS, their grantees, successors in interest, and assignees shall retain all rights as owners of said land, including the right of use of said land for all purposes not inconsistent with this Declaration.

(3) The rule of strict construction does not apply to this grant. This Declaration shall be given reasonable construction so that the intention of the parties to confer useable rights to the DISTRICT is carried out.

(4) It is further understood that nothing contained is intended, or shall be construed, to give rise to any duties or liabilities on behalf of DISTRICT, its officials, agents, servants, and employees, which are not authorized or required by law.

(5) DECLARANTS release and agree DISTRICT shall not be liable for, and agree to hold DISTRICT harmless from, any and all claims by DECLARANTS or those claiming by, through or under DECLARANTS for damages, including those to adjacent land within the real estate described in Exhibit 1, arising out of DISTRICT'S application of wastewater treatment plant effluent and DISTRICT'S

- 7 -

0907 0376

11685046

7